OPINION
{¶ 1} Appellant, Leonard R. Norwood, Jr., appeals from the December 18, 2003 judgment entry of the Painesville Municipal Court, in which he was sentenced for assault.
 {¶ 2} On July 24, 2003, a complaint was filed against appellant charging him with one count of assault, a misdemeanor of the first degree, in violation of R.C. 2903.13(A), and one count of falsification, a misdemeanor of the first degree, in violation of R.C. 2921.13(A)(3). On September 18, 2003, appellant entered a plea of not guilty at his initial appearance.
 {¶ 3} On September 19, 2003, the trial court entered a nolle prosequi to the falsification charge.
 {¶ 4} A jury trial commenced on November 7, 2003. At the close of the state's case, appellant's counsel moved for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court.[1] At the close of appellant's case, appellant's counsel renewed the Crim.R. 29 motion, which was again overruled by the trial court. The jury returned a verdict of guilty to the assault charge.
 {¶ 5} According to appellant's App.R. 9(C) statement of the evidence, Deputy Butler, with the Lake County Sheriff's Department ("LCSD"), testified for appellee that the incident at issue occurred about 12:00 a.m. on July 10, 2003, at Katie's Pub in Painesville Township, Ohio. Deputy Butler indicated that he obtained a statement from Andrew Calabrese ("Calabrese") and attempted to get statements from other witnesses, however, some of the witnesses with appellant's group were uncooperative. Deputy Butler and Deputy Woodruff, also with the LCSD, stated that upon arriving at Katie's Pub, they discovered co-defendant Peter Manista ("Manista") drunk and lying in a ditch. When questioned by the officers, Manista claimed to be appellant, which was later determined to be a false statement. Deputies Butler and Woodruff said that appellant was found elsewhere in Painesville that night, sitting in his vehicle with his girlfriend, Susan Wedding ("Wedding").
 {¶ 6} Stacy McKenna ("McKenna") testified for appellee that she went to Katie's Pub to meet Calabrese after he got off from work at the Tap House. McKenna met appellant's group which at that time included Lenny Norwood, Sr. ("Lenny Sr."), his daughter, Christine Henniger ("Henniger"), Tina Mazzolini ("Mazzolini"), and Wedding. McKenna learned that the group was celebrating several birthdays and that they were waiting for appellant to arrive with Manista. McKenna indicated that Calabrese arrived, ordered a drink, then went to use the restroom. McKenna stated that she saw Manista follow Calabrese out of the restroom and that Calabrese ran out complaining that someone had hit him. McKenna said that she never saw appellant near the restroom. McKenna maintained that she saw Manista go over to Calabrese and hit him before a group of people, including Lenny Sr., his daughter, and appellant, tried to break it up. McKenna was hit in the face, however, she was unable to determine who struck her.
 {¶ 7} Calabrese testified for appellee that he was struck from behind in the restroom by a man who told him that he was in the wrong place. According to Calabrese, Manista followed him out of the restroom. Calabrese said that he sat down for less than one minute before he was struck again from behind. Calabrese stated that when others rushed to help him, he was struck about a dozen times, and pushed into the bar, however, he did not see who hit him or who broke up the fight. Calabrese indicated that the only individual directly behind him was appellant. On cross-examination, Calabrese maintained that a few weeks after the incident appellant was a guest in Calabrese's home and that he did not recognize appellant as the individual who struck him at Katie's Pub.
 {¶ 8} According to Wedding, who testified for appellant, she went to Katie's Pub to celebrate the birthday of Lenny Sr., and his daughter. Wedding indicated that the group was drinking and playing pool while waiting for appellant and Manista to arrive from the Cleveland Indians game. Wedding stated that when appellant and Manista finally arrived, Manista was already drunk and depressed over the recent death of Lenny Sr.'s son, Michael. Wedding observed a commotion near the men's restroom and saw individuals attempt to provide assistance. Wedding said that she saw everyone try to pull Manista off the "kid" at the bar that he chased out of the restroom. Wedding testified that she saw appellant and Lenny Sr., try to get Manista off of Calabrese.
 {¶ 9} Mazzolini testified for appellant that she also saw a commotion near the men's restroom and that people from the group tried to break up the fight.
 {¶ 10} According to Henniger, who also testified for appellant, she and appellant tried to calm Manista down and attempted to keep Manista off of Calabrese. Henniger indicated that appellant did not try to hit Calabrese.
 {¶ 11} Pursuant to its December 18, 2003 judgment entry, the trial court sentenced appellant to sixty days in jail, fifty days suspended, placed him on probation for six months, and ordered him to pay a fine in the amount of $250. Appellant's sentence was stayed pending appeal. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 12} "[1.] The trial court erred to the prejudice of [appellant] in denying the motion for acquittal made pursuant to Crim.R. 29(A).
 {¶ 13} "[2.] The trial court erred to the prejudice of [appellant] when the jury returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 14} In his first assignment of error, appellant argues that the trial court erred in denying his Crim.R. 29(A) motion for acquittal. Appellant stresses that appellee failed to prove beyond a reasonable doubt that appellant committed Calabrese's assault.
 {¶ 15} In State v. Bridgeman (1978), 55 Ohio St.2d 261, the Supreme Court of Ohio established the test for determining whether a Crim.R. 29 motion for acquittal is properly denied. The Supreme Court stated that "[p]ursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." Id. at syllabus. "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state."State v. Patrick, 11th Dist. Nos. 2003-T-0166 and 2003-T-0167, 2004-Ohio-6688, at ¶ 18.
 {¶ 16} As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13-14:
 {¶ 17} "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 {¶ 18} "`"(* * *) The test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiryabout due process. It raises a question of law, the resolution of whichdoes not allow the court to weigh the evidence. * * *"'
 {¶ 19} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence `in a light most favorable to the prosecution,' * * * `(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.' * * *" (Emphasis sic.) (Citations omitted.)
 {¶ 20} * * * [A] reviewing court must look to the evidence presented * * * to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." State v. March
(July 16, 1999), 11th Dist. No. 98-L-065, 1999 Ohio App. LEXIS 3333, at 8. The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997), 79 Ohio St.3d 421, 430.
 {¶ 21} With respect to circumstantial and direct evidence, the Supreme Court of Ohio in Jenks, supra, paragraph one of the syllabus, stated that:"[c]ircumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof. When the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction. Therefore, where the jury is properly and adequately instructed as to the standards for reasonable doubt a special instruction as to circumstantial evidence is not required. (Holland v. United States (1954), 348 U.S. 121 * * *, followed; State v. Kulig (1974), 37 Ohio St.2d 157 * * *, overruled.)" (Parallel citations omitted.)
 {¶ 22} In the case sub judice, appellant is challenging his R.C.2903.13(A) assault conviction which provides that: "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *."
 {¶ 23} Here, the evidence establishes that appellant was at Katie's Pub and in the area where part of the assault occurred. However, based on appellant's App.R. 9(C) statement, there was no witness testimony that appellant was directly involved in the altercation. Appellee offered no objections to appellant's App.R. 9(C) statement. As such, there is not a sufficient, direct fact to make a reasonable inference that appellant knowingly caused or attempted to cause physical harm to Calabrese. Pursuant to Schlee, supra, there does not exist substantial evidence upon which the jury could reasonably conclude beyond a reasonable doubt that all of the elements of the offense have been proven. Appellant's first assignment of error is with merit.
 {¶ 24} In his second assignment of error, appellant alleges that his conviction for assault is against the manifest weight of the evidence.
 {¶ 25} Based on this court's analysis regarding the first assignment of error, appellant's second assignment of error is hereby rendered moot.
 {¶ 26} For the foregoing reasons, appellant's first assignment of error is well-taken and appellant's second assignment of error is moot. The judgment of the Painesville Municipal Court is reversed and judgment is entered for appellant.
Grendell, J., Rice, J., concur.
[1] Due to a major defect in the trial recording, a transcript of the jury trial could not be prepared. On April 6, 2004, appellant filed a statement of the evidence pursuant to App.R. 9(C). Appellee, the state of Ohio, did not file any objections or proposed amendments to appellant's App.R. 9(C) statement. Pursuant to its April 23, 2004 judgment entry, the trial court approved appellant's statement of the evidence.