OPINION
{¶ 1} Appellant, Todd W. Worthy ("Worthy"), appeals from the judgment of the Lake County Court of Common Pleas, wherein Worthy was convicted of three counts of burglary, three counts of aggravated arson, and six counts of receiving stolen property. The convictions relate to three separate incidents.
 {¶ 2} The relevant facts are as follows. In the summer and fall of 2003, three homes were set on fire in Madison Township. In addition to the fires, personal property from each of the homes was found to be missing.
 {¶ 3} On August 19, 2003, the McNamara's summer home was set on fire. Evidence established that the fire was set on the exterior of the home causing damage. The Madison Township Fire Department ("Fire Department"), determined that the fire was set with an accelerant and labeled the fire as an arson. Items from inside the shed and home were determined to be missing by the McNamaras, including a television, stereo, telephone, flashlights, camping equipment, and fishing poles.
 {¶ 4} On September 18, 2003, the home of the Kostan's was set on fire. At the time of the fire, no one lived at the home. However, the owner's family frequently visited the home to maintain the premises and its contents. The Fire Department determined that the cause of the fire was arson. Upon inspection, it was determined that items were missing from the home and theft was suspected.
 {¶ 5} On September 25, 2003, the Duszynski home was set on fire. The home was intended for use as a retirement home. The owners lived in a nearby apartment and often worked on the property. The night of the fire, Duszynski had visited the house to check the lights and insure the house was secure. In the early morning hours, she was notified that the home was on fire. As a result of the fire, nearly all of the owners' possessions were destroyed.
 {¶ 6} During the winter, police identified Worthy as a possible suspect. First, the police determined that Worthy was not in the area at the time of the fires. Later, it was discovered that Worthy was residing at his mother's house in Madison Township, during the time period of the fires.
 {¶ 7} During the trial, Steve Samynek ("Steve") testified that on December 30, 2003, Worthy contacted him and offered to give him some of the stolen property. At the time, Steve had charges pending against him and he decided to work with the police, and contacted them to advise them of Worthy's offer. Steve was wired with a listening device and sent to meet Worthy at his home along with police escorts. Worthy's mother granted consent for a search of the entire premises. Police officers entered Worthy's garage and located many of the items reported missing in the fires. The police department then reviewed theft reports to determine whether the items seized were stolen. Pursuant to a subsequent search warrant issued on Jan 9, 2004, the police returned to Worthy's residence and retrieved items including, a rotor-tiller, television, camping equipment, fishing poles, cam corder, power washer, gas cans, saw horses, extension ladders, garden tools, stereo, and jewelry. These items were later identified by the McNamara's, Duszynski, and the Kostans, as their personal property.
 {¶ 8} Worthy was taken into custody and transported to the police department for questioning. Worthy waived his Miranda rights and made oral and written statements, admitting that he started the fires at all three of the homes by accidentally dropping a match or cigarette, and took items from all three homes.
 {¶ 9} On February 26, 2004, Worthy was indicted by the Lake County Grand Jury on the following fourteen charges: (1) four counts of burglary, felonies of the second degree in violation of R.C. 2911.12(A)(2); (2) three counts of aggravated arson, felonies of the second degree in violation of R.C. 2909.02(A)(2); (3) one count of arson, a felony of the fourth degree, in violation of R.C. 2909.03(A)(1); and (4) six counts of receiving stolen property, felonies of the fifth degree in violation of R.C. 2913.51(A).
 {¶ 10} Worthy entered a plea of not guilty to all charges against him, and a jury trial commenced on June 16, 2004. At the close of the state's case, Worthy moved for acquittal on all charges, pursuant to Crim. R. 29. The motion was overruled. The defense subsequently rested.
 {¶ 11} On June 18, 2004, the jury convicted Worthy on twelve of the fourteen counts. He was acquitted of one burglary charge and the arson charge. Specifically, the jury found Worthy guilty of counts two (burglary, McNamara), three (aggravated arson, McNamara), four (receiving stolen property, McNamara), six (burglary, Kostan), seven (aggravated arson, Kostan), eight (receiving stolen property, Kostan), nine (burglary, Duszynski), ten (aggravated arson, Duszynski), eleven (receiving stolen property, Duszynski), twelve through fourteen (receiving stolen property). Sentencing was deferred until completion of a pre-sentencing report, psychiatric evaluation, and a victim impact statement.
 {¶ 12} On July 19, 2004, the court sentenced Worthy to an aggregate prison term of 42 years, as follows: eight years on counts two and three, and twelve months on count four, to run concurrent with each other; eight years on count six and count seven, to run consecutive to each other, and consecutive to counts two, three and four; twelve months on count eight, concurrent to count six; eight years on count nine, and eight years on count ten, consecutive to each other, and consecutive to counts two, three, four, six and seven; twelve months on count eleven, concurrent to count nine; twelve months on count twelve, consecutive to counts two, three, four, six, seven, eight, nine, and ten; six months on count thirteen, concurrent to counts two, three, and four; and twelve months on count fourteen, consecutive to counts two, three, four, six, seven, eight, nine, ten, and twelve.
 {¶ 13} It is from this judgment that Worthy filed a timely notice of appeal and presents the following assignments of error for our review:
 {¶ 14} "[1] The trial court committed reversible error to the prejudice of the defendant-appellant by overruling his Crim. R. 29 motion for acquittal as to the charges of aggravated arson and burglary in violation of his due process rights, when evidence was insufficient to support the charge of the indictment.
 {¶ 15} "[2] The defendant appellant was denied due process where the verdict was against the manifest weight of the evidence."
 {¶ 16} In his first assignment of error, appellant alleges that the evidence was insufficient to sustain a conviction for his three convictions of burglary, and three convictions of aggravated arson.[1]
 {¶ 17} We initially note that Worthy's sufficiency arguments are based primarily on the Ohio Supreme Court's holding in State v. Kulig (1974),37 Ohio St.2d 157. Worthy erroneously relies on the following language from Kulig to support his sufficiency argument: "Circumstantial evidence relied upon to prove an essential element of a crime must be irreconcilable with any reasonable theory of an accused's innocence in order to support a finding of guilt." Id., at syllabus. The Ohio Supreme Court specifically overruled Kulig in State v. Jenks (1991),61 Ohio St. 3d 259. The Court in Jenks held: "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof. When the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction. * * *" Id., at paragraph one of the syllabus.
 {¶ 18} Therefore, contrary to Worthy's contention, we need not find the circumstantial evidence to be irreconcilable with any reasonable theory of innocence, in order to find sufficient evidence to support Worthy's convictions. See, also, State v. Norwood, 11th Dist. No. 2004-L-2003, 2005-Ohio-3402, at ¶ 21.
 {¶ 19} A sufficiency argument tests whether the state has presented evidence on each element of the offense. As this court stated in Statev. Schlee, 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13-14: "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 {¶ 20} "`(* * *)The test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiryabout due process. It raises a question of law, the resolution of whichdoes not allow the court to weigh the evidence. * * *
 {¶ 21} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence `in a light most favorable to the prosecution,' * * * `(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.' * * *" (Citations omitted and Emphasis sic.)
 {¶ 22} "* * * [A] reviewing court must look to the evidence presented * * * to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." State v. March,
11th Dist. No. 98-L-065, 1999 Ohio App. LEXIS 3333, at 8. The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. Jenks, supra, paragraph two of the syllabus. Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997), 79 Ohio St.3d 421, 430.
 {¶ 23} Applying this standard to the case sub judice, the state was required to produce sufficient evidence to establish that Worthy committed three counts of burglary, and three counts of aggravated arson. Worthy contends that the state failed to provide sufficient evidence of the requisite mens rea for his burglary and aggravated arson convictions.
 {¶ 24} It is well established that direct evidence is not essential to prove an element of an offense, and that circumstantial evidence is equally probative, especially as to a mental state in which the sole direct evidence is known only to the accused. Jenks. Moreover, because a defendant's mental state is difficult to demonstrate with direct proof, it may be "inferred from the circumstances." State v. Logan (1979),60 Ohio St.2d 126, 131.
 {¶ 25} R.C. 2911.12(A)(2) governs the crime of burglary and states that "[n]o person, by force, stealth, or deception, shall * * * trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]"
 {¶ 26} The requisite mental state for burglary is "purposely." "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A)
 {¶ 27} We note that in its brief, the state concedes that as to count two, burglary, it presented no evidence that Worthy entered the dwelling of McNamara. The state agrees that Worthy's conviction on this count should be reversed. Therefore, based upon the state's concession we agree that Worthy's sufficiency argument as to count two has merit.
 {¶ 28} As to the burglary convictions of counts six and nine, Worthy specifically contends that that the state failed to produce sufficient evidence that he purposely intended to commit theft or arson at the time of the burglaries.
 {¶ 29} As to count six, testimony from the Madison Township Fire Chief Walter Zilke ("Zilke") established that the room of origin of the fire was an enclosed porch with removable panels. Testimony further established that the owners had left the residence locked and secured. Further, silverware seized from Worthy's house was identified as belonging to the owners and reported missing from the home immediately after the fire.
 {¶ 30} As to count nine, Ms. Duszynski testified that on the night of the fire she had been present at the home. She locked the doors, upon leaving. After the fire, she noticed that a steel door appeared to have been pried open. Zilke testified that the hinges on the steel door appeared to be ripped, and the door was damaged, yet was not warped from the fire. An air compressor, shop vacuum, and jewelry, all reported missing after the fire, were seized from Worthy's residence, and identified by Ms. Duszynski as her possessions missing from the home immediately after the fire.
 {¶ 31} Further, in his statements to police, Worthy admitted to starting the fires at the homes, and to taking items from the arsons. Thus, it is clear that the state presented sufficient evidence for a reasonable inference by the jury that Worthy purposely entered the home to commit aggravated arson or to commit theft.
 {¶ 32} Next, we turn to Worthy's three convictions for aggravated arson. Worthy argues that insufficient evidence exists to prove the requisite mens rea under R.C. 2909.02(B), that he "knowingly" set the fires. We disagree.
 {¶ 33} R.C. 2909.02 (A) provides that: "[no] person, by means of fire, or explosion, shall knowingly * * *: cause physical harm to an occupied structure[.]" "Knowingly" is defined as follows in R.C. 2901.22(B):
 {¶ 34} "A person acts knowingly, regardless of purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist. A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.
 {¶ 35} At the outset, we note that is not unusual in arson cases that there is no eyewitness to the arson. Ohio's courts have consistently found that circumstantial evidence can be sufficient to sustain an arson conviction. State v. Webb, 8th Dist. No. 72588, 1998 Ohio App. LEXIS 2851; State v. Zayed, 8th Dist. No. 71039, 1997 Ohio App. LEXIS 3518;State v. Wills (1997), 120 Ohio App.3d 320; State v. Weber (1997),124 Ohio App.3d 451; State v. Alba, 6th Dist. No. S-94-018, 1995 Ohio App. LEXIS 2255; State v. Wright, 3rd Dist. No. 3-92-24, 1994 Ohio App. LEXIS 6090. The element of knowledge required for a finding of aggravated arson can be established by circumstantial evidence. State v. Hoak,
9th Dist. No. 94-CA00-59-17, 1995 Ohio App. LEXIS, at 10; State v. Simpson,
7th Dist. Nos. 01-CO-29, 2002-Ohio-5374, at ¶ 48.
 {¶ 36} In statements to the police, Worthy admitted the following: being at the scenes of all three homes and that he started all three fires by dropping matches or cigarettes at all three homes. Further Worthy stated as to the McNamara arson, "I did it by accident," and as to setting the Duszynski house fire, Worthy stated "I didn't mean to." Testimony at the trial further established that Worthy knew facts about the arsons that were not public knowledge, including that the McNamara fire started at the rear door. At trial, Worthy conceded that he had possession of stolen property from each of the three dwellings, reported missing after the fires.
 {¶ 37} We find sufficient evidence for the jury to properly infer that Worthy was aware that his conduct may cause physical damage to the dwellings. Therefore, based on Schlee, there is substantial evidence upon which the jury could have reasonably concluded beyond a reasonable doubt that Worthy knowingly set the fires. Worthy's first assignment of error is without merit.
 {¶ 38} In his second assignment of error, Worthy argues that his burglary convictions, and aggravated arson convictions are against the manifest weight of the evidence.
 {¶ 39} Under this assignment of error, we note that although the evidence may have been sufficient to sustain a guilty verdict, the issue of manifest weight requires a different type of analysis than a challenge of sufficiency of the evidence. "* * * `[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 {¶ 40} "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record,weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"' (Citations omitted.)" (Emphasis sic.)
 {¶ 41} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v.Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 42} In this case, Worthy argues that his confession was the sole evidence linking him to the burglary and aggravated arson convictions. Although there were no witnesses, reliable evidence established Worthy's involvement in the burglaries and aggravated arsons. The weight and credibility of Worthy's confession was properly left to the jury.
 {¶ 43} Based upon the credible evidence presented, and pursuant toSchlee and Thompkins, the jury clearly did not lose its way in convicting Worthy of two counts of burglary, and three counts of aggravated arson. Thus, Worthy's second assignment of error is without merit.
 {¶ 44} Based upon the foregoing, we affirm in part and reverse in part. The judgment of the Lake County Court of Common Pleas is affirmed with respect to the two burglary convictions of counts six and nine, and the three aggravated arson convictions of counts, three, seven, and ten. Based upon the state's concession, we reverse count two, burglary, and enter judgment for appellant on that count.
DONALD R. FORD, P.J., CYNTHIA WESTCOT RICE, J., concur.
[1] Worthy is not appealing his convictions for receiving stolen property in counts, four, eight, eleven, twelve, thirteen, and fourteen. Hence, we shall not engage in an analysis of those convictions in this appeal.