[Cite as *State v. Juarez*, 2018-Ohio-991.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27654 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-3939/2 |
| | : | |
| ANGELA F. JUAREZ | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of March, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by HEATHER N. JANS, Atty. Reg. No. 0084470, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

CARL BRYAN, Atty. Reg. No. 0086838, 120 West Second Street, Suite 603, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Defendant-appellant, Angela F. Juarez, appeals from her conviction in the Montgomery County Court of Common Pleas after a jury found her guilty of complicity to burglary. In support of her appeal, Juarez contends that her conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. Juarez also contends that her trial counsel rendered ineffective assistance by failing to object to the trial court's jury instruction on aiding and abetting. For the reasons outlined below, the judgment of the trial court will be affirmed.

## Facts and Course of Proceedings

{¶ 2} On March 28, 2017, the Montgomery County Grand Jury returned an indictment charging Juarez with burglary in violation of R.C. 2911.12(A)(3). Juarez pled not guilty to the charge and the matter proceeded to a jury trial. At trial, the State advanced a theory of complicity to burglary and presented evidence demonstrating that Juarez aided and abetted her brother, Aaron Stamper, in stealing jewelry from the residence of Sherry Winchester in Huber Heights, Ohio.

{¶ 3} During its case in chief, the State presented the testimony of Sherry Winchester. Winchester testified that she paid Stamper to mow her lawn and that on one occasion in the fall of 2016, Stamper indicated that he was unable to mow for her. Winchester claimed that Stamper offered to have his sister, Juarez, and her husband, Rudolpho, mow in his place. Winchester testified that she agreed to the arrangement suggested by Stamper, and that Juarez and her husband came to her residence and mowed her lawn.

{¶ 4} Winchester recalled that when Juarez and her husband arrived to mow, they parked their vehicle down the street in front of her neighbor's house as opposed to in her driveway or in front of her house. Winchester testified that she thought this was odd, but did not think anything of it at the time. Winchester also testified that her lawn mower ran out of gas while Juarez and her husband were mowing, and that Stamper had previously advised her that her lawn mower was low on gas. Winchester claimed that she left her residence for approximately 15 minutes to purchase some gas at Speedway while Juarez and her husband waited outside for her to return. During that time, Winchester testified that the front door to her residence was locked and her back sliding door was closed, but that her back dining room window was open.

{¶ 5} Continuing, Winchester testified that after she returned from Speedway, she handed Juarez's husband a can of gas while he and Juarez were standing outside in her yard. Thereafter, Winchester testified that Juarez and her husband finished mowing her lawn. Once they were finished mowing, Winchester claimed that she paid them and they left her residence.

{¶ 6} A few weeks later, a detective visited Winchester's residence on two occasions. Winchester testified that during these visits, the detective had her identify Juarez and a photograph of some jewelry that had been stolen from her bedroom dresser drawer. Winchester identified the photograph of her stolen jewelry at trial and testified that she never gave the jewelry to anyone nor gave anyone permission to enter her bedroom. However, Winchester testified that Stamper had previously been in her house to use the bathroom, which is located next to her bedroom.

{¶ 7} The State also presented the testimony of Detective Robert Bluma of the

Huber Heights Police Department. Bluma testified that he became aware of the burglary at Winchester's residence only after conducting a voluntary interview with Juarez regarding another matter. During the interview, Bluma claimed that Juarez informed him that Stamper had given her some jewelry to sell at a store called T.C. Precious Metals. Bluma testified that Juarez was not initially forthright with this information, as she did not advise him about the jewelry until after he told her that he was going to run her name through a data base that checks transactions of pawned merchandise.

{¶ 8} Bluma then proceeded to testify regarding the information Juarez provided about the jewelry during the interview. The interview was video recorded and the relevant portions of the recording were played for the jury. The recording shows that Juarez told Bluma she helped Stamper sell some jewelry at T.C. Precious Metals using her identification card. During the interview, Juarez initially indicates that she had no reason to believe that the jewelry was stolen, as she claimed that Stamper told her he received the jewelry from a woman whose lawn she mowed, i.e., Winchester. However, as the interview progressed, Juarez eventually reached the conclusion that Stamper had used her and her husband to steal the jewelry from Winchester's residence while they were mowing her lawn in the fall of 2016.

{¶ 9} In reaching that conclusion, Juarez told Detective Bluma that Stamper had accompanied them to Winchester's residence and hid in the back seat of her vehicle while they mowed Winchester's lawn. Juarez confirmed that Winchester had no idea Stamper was present. Juarez claimed that Winchester eventually left the residence to purchase some gas for her lawn mower and that when she returned, Juarez saw Stamper ducking down at the side of Winchester's house. Juarez told Bluma that Stamper whispered for

her to check and see if anyone could see him. Juarez then claimed that Stamper ran back to her vehicle unnoticed as Winchester went back inside her house.

{¶ 10} While Juarez told Bluma that she did not specifically see Stamper go inside Winchester's residence, Juarez claimed that she was confident Stamper went inside based on his actions and based on the fact that she saw Stamper pulling jewelry out of his pocket after they drove away. Juarez confirmed that Stamper did not have the jewelry before they arrived at Winchester's residence. Juarez also confirmed that the jewelry Stamper pulled out of his pockets was the same jewelry he asked her to sell for him at T.C. Precious Metals two days later. At this point in the interview, Juarez acknowledged that Stamper had used her and her husband to steal the jewelry from Winchester's residence; however, Juarez claimed she did not know what Stamper was doing at the time.

{¶ 11} After the recorded interview was played for the jury, Detective Bluma testified that he went to T.C. Precious Metals and obtained a surveillance video of Juarez's transaction, as well as the paperwork documenting the transaction, which included a photograph of the stolen jewelry and a copy of Juarez's identification card. Bluma further testified that he went to Winchester's house and had Winchester identify Juarez and the photograph of the jewelry taken by T.C. Precious Metals, which Winchester positively identified as the jewelry she kept in her bedroom dresser drawer. The surveillance video from T.C. Precious Metals was also played for the jury and it showed Juarez laughing and "raising the roof" with her hands in delight at the conclusion of the transaction.

{¶ 12} The State rested its case following Bluma's testimony and the presentation

of the video and photographic evidence. The defense called no witnesses and moved for an acquittal pursuant to Crim.R. 29, which the trial court denied. Following jury instructions and deliberation, the jury found Juarez guilty of complicity to burglary. The trial court then sentenced Juarez to community control sanctions for a period not to exceed five years.

{¶ 13} Juarez now appeals from her conviction, raising two assignments of error for review.

**First Assignment of Error**

{¶ 14} Juarez's First Assignment of Error is as follows:

THE STATE DID NOT PRESENT EVIDENCE THE WEIGHT OF WHICH WOULD HAVE CONVINCED THE AVERAGE MIND THAT MS. JUAREZ, AT THE TIME OF THE COMMISSION OF THE CRIME, POSSESSED THE SAME LEVEL OF CULPABILITY AS THE PRINCIPAL OFFENDER.

{¶ 15} Under her First Assignment of Error, Juarez contends that there was insufficient evidence to support her conviction for complicity to burglary and that said conviction was against the manifest weight of the evidence. We disagree.

{¶ 16} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to

the state could have found the essential elements of the crime proven beyond a reasonable doubt." (Citations omitted.) *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.) *Id.*

{¶ 17} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2d Dist. Greene Nos. 2013 CA 61, 2013 CA 62, 2014-Ohio-3432, ¶ 24, citing *Wilson* at ¶ 14.

{¶ 18} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). However, we may determine which of several competing inferences suggested by the evidence should be preferred. The fact that the evidence is subject to different interpretations does not render the conviction against the manifest

weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 19} As previously noted, Juarez is challenging her conviction for complicity to burglary. The complicity statute, R.C. 2923.03(A)(2), provides that: "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]" Therefore, "[i]f a person acting with the kind of culpability required for the commission of an offense aids or abets another in committing the offense, that person is guilty of complicity in the commission of the offense, and shall be prosecuted and punished as if he were a principal offender." *State v. Wade*, 2d Dist. Clark No. 06-CA-108, 2007-Ohio-6611, ¶ 20, citing R.C. 2923.03(A)(2) and (F).

{¶ 20} The underlying offense of burglary occurs when a person, "by force, stealth, or deception, * * * trespass[es] in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense." R.C. 2911.12(A)(3).

{¶ 21} "The requisite mental state for burglary is 'purposely.' " *State v. Worthy*, 11th Dist. Lake No. 2004-L-137, 2005-Ohio-5871, ¶ 26. Therefore, to establish complicity to commit burglary, the State was required to present evidence demonstrating that Juarez purposely aided or abetted Stamper in committing the burglary. "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to

engage in conduct of that nature."  R.C. 2901.22(A).

{¶ 22} In this case, Juarez does not dispute the fact that her actions aided and abetted Stamper in committing the burglary at issue.   Rather, Juarez contends that the State failed to present any evidence demonstrating that her actions were committed with the *purpose* to aid and abet Stamper in the burglary.   Juarez also maintains that the weight of the evidence established that she did not purposefully aid and abet Stamper.  According to Juarez, the only evidence of her culpable mental state was her recorded interview with Detective Bluma and Bluma's testimony regarding the interview, which she claims demonstrates her unawareness of the fact that Stamper stole Winchester's jewelry while she was mowing Winchester's lawn.   Specifically, Juarez maintains that she did not "put two and two together" until she was interviewed by Bluma, and thus cannot be deemed to have purposefully aided and abetted Stamper at the time of the offense.

{¶ 23} The credibility of Juarez's claim that she did not realize Stamper burglarized Winchester's residence until she was interviewed by Bluma was for the jury to determine.  In considering the evidence of Juarez's actions leading up to the burglary, at the time of the burglary, and after the burglary, it was reasonable for the jury to conclude otherwise and find that Juarez purposefully aided and abetted Stamper in burglarizing Winchester's residence.   For instance, the evidence established that, prior to the burglary, Juarez and her husband agreed to mow Winchester's lawn for Stamper, who told Winchester that he was unable to mow on the day in question.   Although Juarez and her husband were allegedly filling in for Stamper, Juarez drove Stamper to Winchester's residence and allowed him to hide in the backseat of her vehicle while she and her husband mowed Winchester's lawn.   The evidence also established that Juarez parked down the street

by Winchester's neighbor's house as opposed to in Winchester's driveway or in front of her house, and that Juarez never told Winchester that Stamper was present. From these actions, the jury could have reasonably concluded that Juarez specifically intended to transport Stamper to Winchester's residence and hide him from Winchester in order to facilitate the burglary.

{¶ 24} The evidence further established that Stamper was aware that Winchester's lawn mower was low on gas, and that Juarez prompted Winchester to leave her residence by notifying Winchester that the lawn mower had run out of gas. The evidence also indicated that Juarez was aware that Stamper accessed Winchester's residence while Winchester left to get gas. Not only did Juarez see Stamper ducking down and hiding at the side of Winchester's house, Juarez acted as a lookout for Stamper after he whispered for her to check and see if anyone could see him. Instead of telling Winchester that Stamper was running from her house, Juarez permitted Stamper to return to her vehicle unnoticed. Based on these actions, the jury could have reasonably concluded that Juarez specifically intended to help Stamper access Winchester's residence and serve as a lookout to facilitate the burglary.

{¶ 25} Juarez's actions after the burglary also support the notion that she purposefully aided and abetted the burglary. For example, Juarez admitted to Bluma that she was aware that Stamper had returned from Winchester's residence with jewelry that he did not previously have, and that she drove away with Stamper and the jewelry in tow. Juarez also helped Stamper sell the jewelry two days later at T.C. Precious Metals using her identification card. Surveillance video from T.C. Precious Metals indicates that Juarez was delighted by the sale, as she is shown laughing and "raising the roof" during

the transaction. Furthermore, Juarez was not initially forthright about selling the jewelry when she was questioned by Detective Bluma.

**{¶ 26}** Considering the foregoing evidence in the light most favorable to the State, we find the evidence was sufficient to establish the purposeful mental state required for complicity to burglary. The only evidence to the contrary is Juarez's statements during her interview with Detective Bluma indicating that she was unaware of the fact that Stamper stole Winchester's jewelry at the time of the offense. However, as previously noted, the jury was not required to believe Juarez's statements. Rather, the jury was free to rely on the evidence of Juarez's actions on the day of the burglary, actions that indicate Juarez specifically intended to assist Stamper in taking the jewelry from Winchester's residence. Therefore, in addition to finding sufficient evidence to support Juarez's conviction, we also find that Juarez's complicity to burglary conviction was not against the manifest weight of the evidence.

**{¶ 27}** Juarez's First Assignment of Error is overruled.

## Second Assignment of Error

**{¶ 28}** Juarez's Second Assignment of Error is as follows:

COUNSEL WAS INEFFECTIVE FOR NOT OBJECTING TO THE TRIAL
COURT'S JURY INSTRUCTIONS ALLOWING THEM TO CONVICT WITH
A LOWER LEVEL OF CULPABILITY.

**{¶ 29}** Under her Second Assignment of Error, Juarez contends that her trial counsel provided ineffective assistance by failing to object to the trial court's jury instruction on aiding and abetting. We again disagree.

{¶ 30} In order to succeed on an ineffective assistance claim, Juarez must establish: (1) her trial counsel's performance was deficient; and (2) the deficient performance prejudiced her. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), paragraph two of the syllabus; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697.

{¶ 31} To establish deficient performance, Juarez must show that her trial counsel's performance fell below an objective standard of reasonable representation. *Id.* at 688; *Bradley* at 142. In evaluating counsel's performance, a reviewing court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689.

{¶ 32} To establish prejudice, Juarez must show that there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-688; *Bradley* at paragraph two of the syllabus. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Bradley* at 142, quoting *Strickland* at 694.

{¶ 33} In this case, Juarez claims her trial counsel was ineffective in failing to object to the following jury instruction on aiding and abetting:

> An aider or abettor is a person who with the kind of culpability required for
>
> the commission of an offense, in this case, *purposely and knowingly*, aids,
>
> helps, assists, encourages, cooperates with, advises, incites or directs

another person or persons to commit an offense.

(Emphasis added.)

**{¶ 34}** According to Juarez, the trial court erroneously used the phrase "purposefully and knowingly" in the jury instruction at issue. Juarez claims that including the term "knowingly" in the jury instruction improperly reduced the level of culpability that was required for her to be convicted of complicity to burglary. Juarez argues that her trial counsel's failure to object to this error amounts to deficient performance which prejudiced her.

**{¶ 35}** After reviewing the instruction, we find that the trial court was required to include the phrase "purposefully and knowingly" to remind the jury of the two applicable mental states that are relevant to burglary. While it is well settled that the primary mental state required for burglary is "purposefully," the mental state of "knowingly" is also incorporated by reference since a burglary requires a trespass. *State v. Day*, 2d Dist. Clark No. 07 CA 139, 2009-Ohio-56, ¶ 23; *State v. Morris*, 10th Dist. Franklin No. 05AP-1032, 2010-Ohio-786, ¶ 20. A trespass occurs when a person "without privilege to do so * * * *knowingly* enter[s] or remain[s] on the land or premises of another." R.C. 2911.21(A)(1). (Emphasis added.) Since the trial court used a conjunctive "and," i.e., "purposefully *and* knowingly," the jury instruction at issue did not reduce the culpable mental state, but correctly indicated that both mental states were required for the underlying offense of burglary. Therefore, the trial court's jury instruction is a correct statement of law on which there was no basis for Juarez's trial counsel to object.

**{¶ 36}** Because the jury instruction was a correct statement of law, Juarez's trial counsel did not render deficient performance in failing to object to the instruction. As a

result, Juarez cannot satisfy the first prong of the *Strickland* test and her ineffective assistance claim must fail.

{¶ 37} Juarez's Second Assignment of Error is overruled.

## Conclusion

{¶ 38} Having overruled both assignments of error raised by Juarez, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Heather N. Jans
Carl Bryan
Hon. Mary Katherine Huffman