[Cite as *State v. Rabatin*, 2019-Ohio-1295.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | CASE NO. 2017-P-0036 |
| MARC C. RABATIN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2016 CR 00696.

Judgment: Affirmed.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Pamela J. Holder,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Wesley A. Johnston*, P.O. Box 6041 Youngstown, OH 44501, and *Eric D. Hall*, P.O. Box 232, Medina, OH 44258 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Marc C. Rabatin, appeals his convictions for Aggravated Arson following a jury trial in the Portage County Court of Common Pleas. For the following reasons, we affirm the convictions.

{¶2} On September 22, 2016, the Portage County Grand Jury returned an Indictment charging Rabatin with the following: two counts of Aggravated Arson, felonies of the first degree in violation of R.C. 2909.02(A)(1) and (B)(1); two counts of Operating Vehicle While Intoxicated, misdemeanors of the first degree in violation of

R.C. 4511.19(A)(1)(a) and (f) and R.C. 4511.19(G); Refusal to Submit to Chemical Tests, a misdemeanor of the first degree in violation of R.C. 4511.19(A)(2); Menacing, a misdemeanor of the fourth degree in violation of R.C. 2903.22; and Assault on Peace Officer, a felony of the fourth degree in violation of R.C. 2903.13(A) and (C)([5]).

{¶3} On September 23, 2016, Rabatin was arraigned and entered a plea of Not Guilty to the charges contained in the Indictment.

{¶4} Between April 25 and 27, 2017, Rabatin's case was tried to a jury. The following testimony, relevant to the issues raised on appeal, was given at trial:

{¶5} Officer Samantha Burton of the Kent Police Department testified that, on September 17, 2016, she received "a dispatch for a report of an intoxicated male who was causing problems at the [Kent] farmer's market." En route, she came upon a vehicle matching the description of the suspect's vehicle given in the dispatch and initiated a traffic stop. Officer Burton identified Rabatin as the operator of the vehicle. After administering field sobriety tests, she placed Rabatin under arrest for OVI and drove him to the Kent Police Department.

{¶6} At the police station, Rabatin's conduct was alternatively aggressively combative and passively noncompliant. Rabatin was verbally abusive not only toward police officers and municipal employees, but also toward an African-American prisoner.

{¶7} Officer Burton testified that Rabatin began making suicidal threats upon arriving at the sally port, threatening to kill himself and everybody else. Rabatin refused to exit the patrol car and fellow Kent Police Officer, John Phillip Gormsen, assisted Burton in taking Rabatin into booking. The officers would also be required to carry Rabatin into his jail cell. Rabatin was searched and his boots, belt, and wallet were

2

removed before he was placed in Cell 3. At the time he entered the cell, Rabatin was wearing socks, jeans, and a red T-shirt.

{¶8} Officer Gormsen also testified regarding the events at the City of Kent jail.

{¶9} Detention Officer Jill Herman of the municipal jail testified regarding Rabatin's booking. Rabatin was "screaming and yelling and ranting and raving" as he was placed in Cell 3. She described Cell 3 as having a toilet, a sink, a bunk, and a mattress.

{¶10} About forty minutes after Rabatin was placed in the cell, Officer Herman heard him shout, "help fire." Immediately the jail's alarm bells and whistles sounded. She found Rabatin lying on the floor of the cell with his head against the door, wearing only underwear and socks. One leg of his jeans was tied around his neck and the other leg was tied to the bars of the cell. The mattress was on fire. Herman had to push his head forward to slide open the door of the cell. She tried to untie the pant leg around his neck but Rabatin resisted by pushing her hands away and clinging to the pant leg. Officers Burton and Gormsen arrived to assist Herman, at which time Rabatin became unresponsive. The officers dragged Rabatin from the cell, handcuffed him, and took him out of the jail.

{¶11} Several videos recorded events at the jail including Rabatin's booking and removal after the fire which were entered into evidence and played for the jury.

{¶12} Jackson Alan Pangburn was being held at the jail on September 17, 2016, in a cell adjoining Cell 3. Although he could not see what Rabatin was doing, he heard Rabatin "yelling and screaming" and "moving around" in his cell. Among other things, Rabatin said he would "burn this place to the ground."

**{¶13}** Captain David Moore of the Kent Fire Department responded to the fire at the jail. He found a mattress "on fire" in Cell 3 and took the mattress out of the building. He returned to the cell and found a small fire on the ground: "it looked like whatever I had when I pulled that mattress off something dropped down on the ground * * * in the middle of the cell." Because it was a small fire, Moore "tried to stomp it out with [his] boot," but it did not go out. The fire – a burning T-shirt – was then extinguished with a pressurized water can.

**{¶14}** Captain Moore testified regarding spontaneous combustion: "Spontaneous combustion is combustion of material either by organic or biological process that creates within that material enough heat to generate ignition of that item." Moore claimed "quite a bit" of experience with spontaneous combustion and provided examples such as mulch fires. Moore noted that spontaneous combustion requires a "lengthy time" and tends to produce "a lot of smoke" prior to ignition.[1] Moore did not think the cell fire was consistent with spontaneous combustion.

**{¶15}** Captain Moore noted that the mattress was designed to be flame resistant, meaning that it "can burn, but [it] will not sustain its own ignition." Something other than the mattress had to create sufficient heat to start the mattress burning.

**{¶16}** Captain William Myers of the Kent Fire Department also responded to the jail fire. He testified that the fire began with Rabatin's T-shirt and spread to the mattress. Myers rejected the idea that other material, such as toilet paper, could have ignited the mattress: "I think it would've taken a more sustained temperature in order to catch that mattress on fire."

---

1. Captain Moore: "So it's burning off the moisture, which shows up as smoke and then as that material starts to break down to its ignition temperature it's gonna become more accurate [sic], that smoke is going to become very obnoxious."

4

{¶17} Neither Captain Moore nor Captain Myers could determine how the fire had been started.

{¶18} Mollie Jordan, a criminalist with the Ohio Department of Commerce, Division of the State Marshall Forensic Laboratory, testified on behalf of Rabatin. She tested the mattress from Cell 3 and Rabatin's T-shirt for the presence of ignitable liquids, i.e., accelerants. Jordan found no evidence of ignitable liquids or "match sticks or remnants of match sticks."

{¶19} Rabatin testified on his own behalf. On the day in question, Rabatin remembered driving and being stopped by the police, but at that point he "blacked out" from the excessive consumption of alcohol. Rabatin had a vague recollection of being in the booking area of the Kent police station. Rabatin believed that he had walked into the cell, laid down on the bottom bunk and saw "a glow in the foam" of the top bunk. Then, a black man jumped off the top bunk and left the cell. After viewing the video evidence, however, Rabatin realized that these things did not happen. Rabatin claimed he "almost died in a cell fire * * * because of the actions taken by the police officers at the Kent City Jail that day, by being wrongly placed in a cell."

{¶20} The jury found Rabatin guilty of both counts of Aggravated Arson; both counts of Operating a Vehicle While Intoxicated; Refusal to Submit to Chemical Tests; Menacing; and an amended count of Assault on Peace Officer, a misdemeanor of the first degree in violation of R.C. 2903.13(A) and (C)(5).

{¶21} Following a sentencing hearing, the trial court sentenced Rabatin to serve the following concurrent prison sentences: eight years for Aggravated Arson (Count 1); four years for Aggravated Arson (Count 2); ninety days for Operating a Vehicle While

5

Intoxicated (Count 3); ninety days for Refusal to Submit to Chemical Tests (Count 4); ninety days for Operating a Vehicle While Intoxicated (Count 5); sixty days for Menacing (Count 6); and ninety days for Assault on Peace Officer (Count 7).

{¶22} On June 6, 2017, the trial court issued its Order and Journal Entry memorializing Rabatin's sentence.

{¶23} On July 7, 2017, Rabatin filed a Notice of Appeal with a Motion for Delayed Appeal, which was granted by this court.

{¶24} On appeal, Rabatin raises the following assignments of error:

{¶25} "[1.] The evidence was insufficient to support the jury's verdict of guilty as to two counts of Aggravated Arson and the Appellant's convictions as to two counts of Aggravated Arson were against the manifest weight of the evidence."

{¶26} "[2.] Appellant's trial counsel provided ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution."

{¶27} In the first assignment of error, Rabatin challenges the sufficiency and manifest weight of his convictions for Aggravated Arson.

{¶28} The manifest weight of the evidence and the sufficiency of the evidence are distinct legal concepts. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 44. With respect to the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

6

{¶29} Whereas "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). "In other words, a reviewing court asks whose evidence is more persuasive -- the state's or the defendant's?" *Id.* An appellate court considering whether a verdict is against the manifest weight of the evidence must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶30} In order to convict Rabatin of Aggravated Arson, the State had to prove, beyond a reasonable doubt, that he, "by means of fire or explosion, * * * knowingly * * * [c]reated a substantial risk of serious physical harm to any person other than the offender." R.C. 2909.02(A)(1).

{¶31} Rabatin's position is that "[w]ithout any evidence as to how the fire started the jury could not have determined that Appellant started the fire." Appellant's brief at 6. Rabatin is incorrect.

{¶32} "It is * * * well-settled under Ohio law that a defendant may be convicted solely on the basis of circumstantial evidence." *State v. Nicely*, 39 Ohio St.3d 147, 151, 529 N.E.2d 1236 (1988). It is equally settled that "[c]ourts in this state have consistently found that circumstantial evidence can be sufficient to sustain an arson conviction."

7

*State v. Webb*, 8th Dist. Cuyahoga No. 72588, 1998 WL 338071, *3 (cases cited). "As is often in the arson cases, there is no eyewitnesses to the arson; proof of arson, out of necessity, must often rely on circumstantial evidence." *State v. Rodano*, 2017-Ohio-1034, 86 N.E.3d 1032, ¶ 37 (8th Dist.); *State v. Worthy*, 11th Dist. Lake No. 2004-L-137, 2005-Ohio-5871, ¶ 35.

{¶33} In the present case, the following evidence is uncontroverted: Rabatin was the only occupant of the cell for approximately forty minutes prior to the outbreak of the fire. The fire began with Rabatin's T-shirt, although the means by which it was started remains unknown. Prior to the fire, Rabatin spoke of "burn[ing] this place to the ground." Such evidence is easily sufficient to sustain his convictions and his convictions are well-supported by the weight of the evidence. *Rodano* at ¶ 38 ("while the state's expert was unable to determine the cause of the fire * * *, the state presented * * * witnesses who testified that * * * Rodano talked about arson * * * on multiple occasions"); *State v. Fisher*, 8th Dist. Cuyahoga No. 105802, 2018-Ohio-2189, ¶ 18 (where other evidence established that only Fisher had access to the courtyard where the fire started, "[t]he fact that no one directly witnessed [him] starting the fire is irrelevant"); *State v. Gonzales*, 3d Dist. Wyandot No. 16-08-17, 2009-Ohio-1656, ¶ 11 and 23 (conviction for Arson upheld despite a lack of direct evidence and no evidence regarding the cause where the fire occurred in Gonzales' house, she had the only set of keys to the house, and she was the last person seen leaving the house).

{¶34} The first assignment of error is without merit.

{¶35} Under the second assignment of error, Rabatin claims constitutionally ineffective assistance of counsel as a result of counsel's failure to retain an arson investigator.

{¶36} To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000), citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus ("[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonableness and, in addition, prejudice arises from counsel's performance").

{¶37} Rabatin asserts that "[c]learly the opinion of an arson investigator testifying on behalf of the Appellant could have swayed the jury to render a verdict of not guilty," given that "the State's witnesses could not identify any incendiary device or an ignition source" and "could not completely rule out spontaneous combustion as the cause of the fire." Appellant's brief at 8.

{¶38} Rabatin has failed to demonstrate any deficiency in trial counsel's performance or prejudice resulting therefrom. There is nothing in the trial record to suggest that another investigator could have identified the source of ignition when two fire captains and a forensic criminalist were unable to do so. There is nothing to suggest that, if the source of ignition were identified, it would exonerate Rabatin. The

testimony of Captain Moore did not demonstrate a reasonable likelihood that spontaneous combustion was the source of ignition, particularly in light of the uncontroverted testimony that the fire began with Rabatin's T-shirt. If there are arguments in favor of spontaneous combustion being the source of the fire, they are not evident from the record before this court.[2] *State v. Cutlip*, 11th Dist. Lake No. 99-L-149, 2001 WL 687493, *8 ("appellant has not proven prejudice as a result of counsel's action in not calling a fire expert").

{¶39} The second assignment of error is without merit.

{¶40} For the foregoing reasons, Rabatin's convictions for Aggravated Arson are affirmed. Costs to be taxed against the appellant.

TIMOTHY P. CANNON, J.,

MARY JANE TRAPP, J.,

concur.

---

2. In *Madrigal*, the Ohio Supreme Court rejected a claim of ineffective assistance based on the failure to retain an eyewitness identification expert with the observation that "[n]othing in the record indicates what kind of testimony an eyewitness identification expert could have provided," and, therefore, "resolving this issue in Madrigal's favor would be purely speculative." *Madrigal* at 390-391. The court further noted that "[e]stablishing that would require proof outside the record, such as affidavits demonstrating the probable testimony" and "[s]uch a claim is not appropriately considered on direct appeal." *Id.* at 391.