[Cite as *State v. Rodano*, 2017-Ohio-1034.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104176**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DALE RODANO

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-590106-A

**BEFORE:** McCormack, P.J., E.T. Gallagher, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** March 23, 2017

**ATTORNEY FOR APPELLANT**

Michael J. Cheselka
75 Public Square, Suite 920
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By: Kerry A. Sowul
Andrew T. Gatti
Assistant County Prosecutors
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, P.J.:

{¶1}  A fire erupted in appellant-defendant Dale Rodano's residence five weeks after he obtained insurance on the house.  The insurance company and the police suspected arson.  A jury ultimately convicted Rodano of three counts of aggravated arson and one count of insurance fraud.  After a careful review of the record and applicable law, we affirm Rodano's convictions.

**Substantive Facts and Procedural History**

{¶2}  On November 7, 2013, five weeks after Rodano obtained insurance on his house in Parma, Ohio from Allstate Insurance, a fire erupted in the house  around 2:00 p.m.  Twenty-three firefighters in Parma's fire department responded to the fire.

{¶3}  Rodano claimed the fire started when one of his pets knocked over a candle on a living room table while he was asleep in a chair in the living room.  However, Agent Joanna Lambert of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) issued a report that opined that the fire was incendiary;  State Fire Marshall Jeffrey Koehn investigated the fire and reached the same conclusion.

{¶4}  On October 28, 2014, the grand jury indicted Rodano of four counts of aggravated arson and one count of insurance fraud.

{¶5}  The trial was initially scheduled for June 1, 2015.  On the day of trial, Rodano's appointed counsel moved to withdraw because Rodano was unhappy with counsel's performance.  The trial was continued to January 19, 2016.  While preparing for the trial, Agent Lambert reviewed her report and, upon further review, she changed

the conclusion of her report from "incendiary" to "undetermined" and issued a second report concluding the cause of the fire was "undetermined." Fire Marshall Jeffrey Koehn, however, did not change his report and did not testify at trial.

{¶6} At the week-long trial, the state presented testimony from Rodano's acquaintance Lawrence Scott Allen, his girlfriend at the time Tracy Correll, his brother David Rodano, his neighbor Scott Thom, whose house sustained damage in the fire, four firefighters, two Allstate employees, and Agent Joanna Lambert. Rodano presented three witnesses to testify on his behalf.

**Trial Testimony**

{¶7} Lawrence Scott Allen, an acquaintance of Rodano, testified that he told Jeffrey Koehn, the state fire marshall in charge of the investigation of this case, about a conversation he had with Rodano in the summer of 2012. In the conversation Rodano entertained the idea of torching his house to collect on the insurance. Rodano specifically mentioned a scenario where "a Christmas tree could conveniently fall over and knock a candle over." Scott Allen later did some plumbing work on Rodano's house. After the fire, he received a call from Rodano. Rodano told him the fire started when he was asleep and one of the pets knocked over a candle and the couch caught on fire. On cross examination, Allen admitted there was tension between the two after he asked Rodano to file an insurance claim for an injury Allen sustained in Rodano's home but Rodano refused.

{¶8} Tracy Correll lived in Rodano's Parma house for almost seven years. She moved out in the first week of October 2013 because of Rodano's problems with alcohol. She testified that they had candles in the house, but they were mostly for decoration and lit only at Christmas. She recalled Rodano talked about fire, remarking that "people light their stuff on fire all the time, Tracy. You know, they can't [really] prove nothing if you don't use an accelerant * * *." Before she moved out in October of 2013, she asked to take her personal belongings, to which Rodano responded, "Bitch, I'll burn your shit down before I give it back to you."

{¶9} Dale Rodano's brother, David Rodano, testified that in September or October of 2013, his brother Dale told him that "he's going to be rich" and that "he was going to set his house on fire and that he was going to tell anybody that asked that the cat and the dog were running around the house and knocked a candle over and that's what caused the fire." When David Rodano commented that the excuse sounded "phoney," his brother responded that "it doesn't really matter because you're innocent until proven guilty" and "nobody would be able to prove that he burned his house down." David Rodano described his brother as drunk and angry at the time he made these statements. Two weeks after the fire, Dale Rodano told his brother "not only that he was going to get money from it, but that he had raised the payout on his insurance company." As David Rodano testified, "[Dale] was laughing about it because * * * it was like he tricked the insurance man," and he felt that he "was going to get away with this because the report that the fire marshal[l] made said that the fire originated on the front porch, and [Dale]

says that he knew for a fact that that was incorrect and that the fire started in his living room." David Rodano testified that his brother did not tell him how the fire started but only that "he was going to tell people that the cat and the dog were running around and knocked a candle over and that's what caused the fire."

{¶10} Four firefighters of Parma's fire department testified regarding their response to the fire and the scope, intensity, duration, and spread of the fire. The state's exhibits included photographs of the house in flames and the extensive damages to the house.

{¶11} Although Counts 2 and 3 of the indictment alleged victims Scott Thom and Norman Thom, only the former testified. Scott Thom was Rodano's next-door neighbor. He testified that around the time of the fire, he was recovering from back surgery. Sometime in the afternoon on the day of the fire, Rodano pounded on Thom's door. By the time he answered the door, Rodano had already gone to another neighbor, Len Ziegler, who lived two doors down from Rodano's house. Thom saw Rodano on his knee in the yard, yelling for people to call 911. The fire department responded within minutes. Thom's house sustained damage from the fire — its vinyl siding melted from the intense heat.

{¶12} Two Allstate Insurance employees also testified. Their testimony indicated that Rodano obtained a homeowner policy for his residence on October 2, 2013. Initially, Tracy Correll was on the policy as well. After she moved out, Rodano made frequent phone calls to the insurance company to ensure that she was removed from the

insurance policy. She was removed on October 25, 2013. After the fire, Rodano frequently expressed his frustration about the slow process of being paid on his policy. In addition to the value of the home, he claimed over $77,000 in personal property damaged by the fire.

{¶13} Agent Joanna Lambert of the ATF conducted an investigation on the cause of the fire. She testified that she initially concluded that a couch on the porch was the origin of the fire and the fire was incendiary, after she eliminated all other reasonable sources of ignition. As she prepared for the trial and reviewed her initial report, however, she began to have concerns about the origin of the fire due to the extent of damage sustained by the couch in the living room. When she further analyzed the data collected from the scene, she placed the origin of the fire in a living room couch, which was by the window looking out to the porch. Agent Lambert's further research and analysis focused on a candle on a living room table.

{¶14} From this further investigation, Agent Lambert issued a second report. She opined that there was a viable ignition source in the living room. However, she did not know where the candle was located and how and where it had ended up, because the fire department personnel could not recall whether the glass base of the candle was recovered from inside the footprint of the couch or outside. She could not conclusively eliminate the cause of fire as an accident. However, she was unable to eliminate the fire as incendiary either. As a result, she ruled the cause of the fire as undetermined.

{¶15} The state solicited testimony from Agent Lambert regarding the rarity of a fire caused by a candle being knocked over. Her research indicated that out of the approximately 10,000 fires per year caused by candles, only two percent could be attributable to a candle being knocked over. Lambert did acknowledge that there were documented fire incidents caused by pets knocking over candles.

{¶16} The defense called four witnesses. Leonard Ziegler testified he lived two doors down from Rodano's house. Rodano told him the fire started while he was asleep in the living room when one of his pets knocked a candle off a table onto an adjacent couch. Ziegler remembered having seen a dog in Rodano's yard on a prior occasion. Emily Henceroth, whose family were the prior owners of the home that was the subject house, testified that she sold the house in 1999 to Rodano. Rodano made several improvements to the house between 2010 and 2013. The third defense witness was Matthew Slotka, Vice President of Ohio Fire Claims, a public adjusting company hired by Rodano to represent him in submitting claims to Allstate. He testified that he conducted an inventory of proof of loss but Allstate denied his claim.

{¶17} The defense's arson expert, John Agosti, presented his finding that the candle in the living room was the source of the fire and its flame ignited the couch. Agosti testified that the fire department's removal of the candle from the spot it was originally found made it impossible for him to determine whether the fire was intentionally or accidentally started. He also concluded that the cause of the fire was "undetermined."

**{¶18}** The defense moved for Crim.R. 29 dismissal after the state presented its case in chief and again after the defense presented its evidence. The trial court denied the motions. The state dismissed Count 4, which related to a purported victim Norman Thom. After deliberation, the jury found Rodano guilty of the remaining four counts: three counts of aggravated arson and one count of insurance fraud. The trial court sentenced him to 6 years in prison on each aggravated arson count and 36 months on the insurance fraud, to be served concurrently. The court also imposed postrelease control and advised Rodano of his duties to register as an arson offender. Rodano now appeals, presenting three assignments of error for our review.

**Grand Jury**

**{¶19}** The first assignment of error states:

The prosecution erred in proceeding on the October 3, 2013 indictment because it was issued it [sic] in violation of Rodano's Fifth Amendment right to be indicted by an independent and unbiased grand jury and because that violation prejudiced Appellant.

**{¶20}** The first assignment of error relates to Agent Lambert's change of her opinion regarding the cause of fire from "incendiary" to "undetermined" subsequent to the grand jury proceeding but before the trial. She testified at trial at length as to both her initial and second report and the reasons for the change in her conclusion.

**{¶21}** As an initial matter, we note that Rodano did not challenge the grand jury's indictment at the trial court. Therefore, we review his claim for plain error. *State v.*

*Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978). An error constitutes plain error if it is obvious and affects a substantial right. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 108. Plain error exists where "but for the error, the outcome of the trial clearly would have been otherwise." *Id*. at ¶ 108, citing *Long*, paragraph two of the syllabus. We take notice of plain error with the utmost caution and the burden of demonstrating plain error is on the party asserting the error. *State v. Jester*, 32 Ohio St.3d 147, 150, 512 N.E.2d 962 (1987).

{¶22} Both Section 10, Article I of the Ohio Constitution and the Fifth Amendment to the Unites States Constitution provide that prosecution for capital offenses or felonies shall be instituted by grand jury indictments. *Costello v. United States*, 350 U.S. 359, 362, 76 S.Ct. 406, 100 L.Ed.397 (1956). The grand jury's responsibilities include both "the determination whether there is probable cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions." *United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). The grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge. *United States v. Williams*, 504 U.S. 36, 51, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992). "An indictment returned by a legally constituted and unbiased grand jury * * * if valid on its face, is enough to call for trial of the charge on the merits." *Costello* at 363.

{¶23} Rodano does not claim on appeal that the indictment is deficient on its face; neither does he claim ineffective assistance of his trial counsel in not moving to quash the

indictment. Rather, Rodano couches his argument in terms of a violation of his right to an indictment by an independent and unbiased grand jury. He argues that, because the grand jury's indictment was based on Agent Lambert's initial "faulty" report, the indictment was not a product of "an investigative deliberation that is independent of both the prosecuting attorney and the court," citing *United States v. Sigma Internatl.*, 244 F.3d 841,856 (11th Cir.2001).

{¶24} Rodano's argument lacks clarity or cohesion. He predicates his claim on a right to be indicted by an independent grand jury, but he does not articulate why the grand jury's investigative deliberation was not independent as a result of its consideration of a report whose author changed her conclusion subsequent to the indictment.

{¶25} Rodano is essentially arguing that he was prejudiced by the grand jury's consideration of Agent Lambert's first report instead of her second report. This claim is apparently based on an assumption that the grand jury would not have indicted him if the prosecutor had instead presented to the grand jury Agent Lambert's second report, which concluded that the cause of the fire was undetermined.

{¶26} Rodano's claim of prejudice is without merit. This arson case, as we discuss in the following, turns primarily on a significant amount of circumstantial evidence in the form of corroborating testimony from multiple witnesses. More importantly, we note that "[t]he indictment is not evidence, as every petit jury in a criminal case is instructed. The prosecution must still produce evidence from which the trial jury can find every element of the offense proven beyond a reasonable doubt, or the

defendant is entitled to a judgment of acquittal." *United States v. Short*, 671 F.2d 178, 183 (6th Cir.1982). "[T]he prosecution's evidence is tested at trial, not in a preliminary proceeding." *Id.*

**{¶27}** Furthermore, the court's supervisory power to review grand jury proceedings is limited to prevent fundamental unfairness. *State v. Hill*, 2015-Ohio-2389, 37 N.E.3d 822, ¶ 22 (8th Dist.), citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256-257, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988). "An error is 'fundamental' when 'the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice.'" *Id.*, quoting *Bank of Nova Scotia*.

**{¶28}** Here, the prosecutor presented to the grand jury the ATF agent's report available to the prosecutor at the time. Although the grand jury did not consider her second report (issued long after the grand jury proceeding), the prosecution's evidence is tested at trial, not in the grand jury proceeding. *Short* at 183. At trial, Agent Lambert testified at great length before the jury regarding her change of opinion regarding the cause of the fire from "incendiary" to "undetermined." Based on the record before us, we do not find the grand jury proceeding in this case fundamentally unfair resulting in prejudice to the defendant. There is no reversible error, plain or otherwise, regarding the grand jury proceeding. The first assignment of error is without merit.

**{¶29}** The second and third assignments of error state:

2.  The evidence is insufficient to support Appellant's conviction of Count 1.

3. The evidence is insufficient to support convictions of aggravated arson in Counts 2 and 3.

{¶30} Count 1 of the indictment charged Rodano with causing harm to his residence under R.C. 2929.02(A)(2). Count 2 charged him with causing harm to Scott Thom's residence also under R.C. 2929.02(A)(2). Count 3 charged him with creating a substantial risk of serious physical harm to Scott Thom under R.C. 2929.02(A)(1). Under the second assignment of error, Rodano claims the evidence was insufficient to support his conviction of Count 1. Under the second assignment of error, he claims the evidence was insufficient to support his convictions of Counts 2 and 3.

**Sufficiency of Evidence**

{¶31} Rodano was convicted of three counts of aggravated arson as defined in R.C. 2929.02. The aggravated arson statute states:

(A) No person, by means of fire or explosion, shall knowingly do any of the following:
(1) Create a substantial risk of serious physical harm to any person other than the offender;
(2) Cause physical harm to any occupied structure; * * *.

{¶32} When reviewing a challenge of the sufficiency of the evidence, we examine the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at paragraph two of the syllabus.

**{¶33}** A sufficiency challenge requires us to review the record to determine whether the state presented evidence on each of the elements of the offense. This test involves a question of law and does not allow us to weigh the evidence. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶34}** For his conviction of aggravated arson relating to his residence (Count 1), Rodano argues that when the state's expert could not determine the cause of the fire, the state's evidence cannot prove arson beyond a reasonable doubt. We disagree.

**{¶35}** "Proof of guilt may be made by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value." *State v. Zadar*, 8th Dist. Cuyahoga No. 94698, 2011-Ohio-1060, ¶ 18. Direct evidence exists when "a witness testifies about a matter within the witness's personal knowledge such that the trier of fact is not required to draw an inference from the evidence to the proposition that it is offered to establish." *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. In contrast, "circumstantial evidence requires the drawing of inferences that are reasonably permitted by the evidence." *Id.* *See also State v. Hartman*, 8th Dist. Cuyahoga No. 90284, 2008-Ohio-3683, ¶ 37 ("[c]ircumstantial evidence is the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind").

**{¶36}** Circumstantial evidence and direct evidence inherently possess the same probative value. *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the

syllabus. "Although there are obvious differences between direct and circumstantial evidence, those differences are irrelevant to the probative value of the evidence — circumstantial evidence carries the same weight as direct evidence." *Cassano* at ¶ 13, citing *State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001). "Since circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Jenks* at 272. "'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying, and persuasive than direct evidence.'" *State v. Hawthorne*, 8th Dist. Cuyahoga No. 96496, 2011-Ohio-6078, quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960).

{¶37} "A conviction can be sustained based on circumstantial evidence alone." *State v. Franklin*, 62 Ohio St.3d 118, 124, 580 N.E.2d 1 (1991), citing *State v. Nicely*, 39 Ohio St.3d 147, 154-55, 529 N.E.2d 1236 (1988). A conviction of arson is no exception. As is often in the arson cases, there is no eyewitnesses to the arson; proof of arson, out of necessity, must often rely on circumstantial evidence. *State v. Hall*, 5th Dist. Richland No. 2004-CA-0093, 2005-Ohio-4403, ¶ 31. Thus, "Ohio's courts have consistently found that circumstantial evidence can be sufficient to sustain an arson conviction." *State v. Simpson*, 7th Dist. Columbiana No. 01-CO-29, 2002-Ohio-5374, ¶ 47, citing *State v. Webb*, 8th Dist. Cuyahoga No. 72588, 1998 Ohio App. LEXIS 2851 (June 25, 1998). *See also, e.g. State v. McDowall*, 10th Dist. Franklin Nos. 09AP-443,

09AP-444, 2009-Ohio-6902, ¶ 12 (while the arson case turns on circumstantial evidence, the defendant's conviction can be sustained based on circumstantial evidence alone); *State v. Simpson*, 7th Dist. Columbiana No. 01-CO-29, 2002-Ohio-5374.

**{¶38}** In this case, while the state's expert was unable to determine the cause of the fire to aid the jury as to the question of whether the fire was the result of arson, the state presented three witnesses who testified that, prior to the November 7, 2013 fire, Rodano talked about arson for insurance money on multiple occasions. Two witnesses recalled that Rodano specifically mentioned a scenario of a fire started by a candle being knocked over, which was exactly how Rodano claimed the November 7, 2013 fire started. Allstate employees testified that Rodano obtained insurance on his residence on October 2, 2013, five weeks before the fire, and contacted the insurance company repeatedly to ensure Tracy Correll was removed from the policy after she moved out some time in October of 2013. Rodano also inflated the value of personal property damage by the fire.

**{¶39}** Although the ATF agent could not determine the cause of the fire as being accidental or incendiary, Rodano made incriminating statements to three witnesses hinting at a plot of arson for insurance money. Viewed in a light most favorable to the state, the strong circumstantial evidence presented by the state here would convince the average mind of the defendant's guilt beyond a reasonable doubt. The second assignment of error is without merit.

{¶40} The third assignment of error concerns the two counts of aggravated arson relating to damages to Scott Thom's residence (Count 2) and the risk of harm to the person Scott Thom (Count 3). Under Count 2, the state must prove Rodano knowingly caused physical harm to Scott Thom's residence. R.C. 2929.02(A)(2). Under Count 3, the state must prove Rodano knowingly created a substantial risk of serious physical harm to Scott Thom. R.C. 2929.02(A)(1). Thom testified that his house's vinyl siding melted from the heat generated by the fire.

{¶41} Regarding these two counts, the issue is whether Rodano, by starting a fire in his own house, "knowingly" caused physical harm to his neighbor Scott Thom's residence and knowingly created a substantial risk of serious physical harm to Scott Thom.

{¶42} R.C. 2901.22(B) defines the mental state of "knowingly" as follows:

A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

{¶43} "The element of knowledge required for a finding of aggravated arson can be established by circumstantial evidence." *State v. Worthy*, 11th Dist. Lake No. 2004-L-137, 2005-Ohio-5871, ¶ 35, citing *State v. Hoak*, 9th Dist. Lorain No. 94-CA00-59-17, 1995 Ohio App. LEXIS 3335, 10, and *State v. Simpson*, 7th Dist. Columbiana Nos. 01-CO-29, 2002-Ohio-5374, ¶ 48. "Commonly, there is no direct

evidence of a defendant's state of mind so the state must rely on circumstantial evidence to satisfy this element of its case. A defendant's state of mind may be inferred from the totality of the surrounding circumstances." (Citation omitted.) *In re Horton*, 4th Dist. Adams No. 04CA794, 2005-Ohio-3502, ¶ 23.

{¶44} Pursuant to R.C. 2901.22(B), the state was only required to produce evidence to show that Rodano was aware that his conduct "will probably" cause physical harm to Scott Thom's residence (Count 2) and create a substantial risk of serious harm to Scott Thom (Count 3). R.C. 2901.22(B). Regarding a "substantial risk," R.C. 2901.01(A)(8) defines it as "a strong possibility, as contrasted with remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

{¶45} Although there was no testimony regarding whether the fire could have easily spread to the neighbor's house, or how close the two houses are, the state introduced exhibit Nos. 1 and 2 (through Firefighter James Mitchell's testimony), which are photographs depicting Rodano's house in flames and these photographs show the close proximity of Thom's house and Rodano's house, which sit on small city lots. The testimony that Rodano immediately ran to Thom's residence to alert him of the fire also evinces Rodano's knowledge and awareness of the strong possibility of harm to Thom and his residence.

{¶46} Therefore, the state produced sufficient evidence, although circumstantial, that Rodano was aware that his conduct "will probably" cause physical harm to Scott Thom's residence and create a substantial risk of serious harm to Scott Thom, from which

the jury could infer that Rodano acted "knowingly."    Rodano's convictions of Counts 2 and 3 are supported by sufficient evidence.   The third assignment of error is without merit.

**{¶47}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.   The defendant's conviction having been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
TIM McCORMACK, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
MELODY J. STEWART, J., CONCUR