[Cite as *State v. Murphy*, 2018-Ohio-3506.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case Nos. 27801 and 27802 |
| | : | |
| v. | : | Trial Court Case Nos. 2016-CR-1547 |
| | : | and 2016-CR-2363 |
| DONTE MURPHY | : | |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 31st day of August, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by HEATHER N. JANS, Atty. Reg. No. 0084470, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

BROCK A. SCHOENLEIN, Atty. Reg. No. 0084707, 371 West First Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Donte Murphy appeals from his convictions for three counts of sexual battery and one count each of forgery and tampering with records. He contends that the State did not present evidence sufficient to sustain the convictions, that the convictions were not supported by the weight of the evidence, and that R.C. 2907.03(A)(7) (defining sexual battery) is unconstitutional.

{¶ 2} We conclude that there was evidence in the record from which a reasonable finder of fact could conclude that Murphy was guilty of the charged offenses. We further conclude that the convictions were not against the manifest weight of the evidence, and that the statute is not unconstitutional. Accordingly, the judgment of the trial court is affirmed.

**I. Facts and Procedural History**

{¶ 3} Murphy was the men's varsity track coach for Ponitz Career Technology Center (hereinafter "Ponitz"), a high school under the administration of the Dayton Public Schools (hereinafter "DPS") and the Dayton School Board (hereinafter "Board"). He also helped coach select members of the Ponitz women's track team. Of relevance hereto, in 2016, he coached D.M., who was a member of the Ponitz women's track team.

{¶ 4} In seeking to continue as track coach for 2016, Murphy submitted an application to the DPS Office of Human Resources along with a "3 year Pupil Activity Permit" which purported to have been issued on August 8, 2014. On March 18, 2016, Judith Spurlock, the Executive Director of the Office of Human Resources for DPS sent Murphy a letter informing him that his employment was terminated because he did not

have a current approved Ohio pupil activity permit. The termination was approved by the Board on April 19, 2016. Although no longer employed, Murphy continued to be present at, and involved with, track practices at Ponitz as well as track meets.

{¶ 5} On March 22, 2016, Murphy and D.M. engaged in consensual sexual intercourse in Murphy's vehicle.[1] On April 14, 2016, they engaged in consensual intercourse and fellatio in his car. Both incidents occurred near D.M.'s home in Dayton.

{¶ 6} On May 4, 2016, Murphy was conducting track practice at Ponitz when he was summoned to a conference regarding allegations that D.M. and he had engaged in sexual conduct. Murphy denied the sexual relationship and stated that he was merely D.M.'s coach, that they had a coach-athlete relationship and that he was acting as a parent to D.M. due to the fact that her father had recently died. Eventually however, Murphy did admit to engaging in sexual relations with D.M. Murphy was then trespassed from all DPS properties.

{¶ 7} On July 7, 2016, Murphy was indicted, in Montgomery C.P. No. 2016-CR-1547, on three counts of Sexual Battery in violation of R.C. 2907.03(A)(7). On September 7, 2016, he was indicted, in Montgomery C.P. No. 2016-CR-2363, on one count of tampering with records in violation of R.C. 2913.42(A)(1) and one count of forgery in violation of R.C. 2913.31(A)(3). Murphy waived his right to a jury in both cases, and the cases were tried simultaneously. The trial court found Murphy guilty on all charges and sentenced him to community control sanctions not to exceed a term of five years. Murphy appealed, and the cases were consolidated for review.

---

[1] D.M. turned 18 in February 2016.

## II. Sufficiency and Manifest Weight Analysis

**{¶ 8}** Murphy asserts the following two assignments of error:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S RULE 29 MOTION AS TO EACH COUNT IN THE INDICTMENT.

APPELLANT'S CONVICTIONS WERE ENTERED AGAINST THE WEIGHT OF THE EVIDENCE.

**{¶ 9}** Murphy argues that the trial court erred in overruling his Crim.R. 29(A) motion, because the State failed to provide evidence sufficient to support the convictions.[2] He further argues that the convictions were against the weight of the evidence.

**{¶ 10}** "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "The relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, (1979); *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact."

---

[2] The record demonstrates that defense counsel did not seek a Crim.R. 29 acquittal at any time during trial. Thus, we review the claim as a sufficiency of the evidence argument subject to the plain error standard. *State v. Osterfeld*, 2d Dist. Montgomery No. 20677, 2005-Ohio-3180, ¶ 9.

*Dennis* at 430, citing *Jenks* at 273.

**{¶ 11}** "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. A court reviews " 'the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 12}** } Further, while "sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. *Accord State v. Robinson*, 2d Dist. Montgomery No. 26441, 2015-Ohio-1167, ¶ 17; *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

**{¶ 13}** Murphy first argues that the convictions for tampering with records and forgery were not supported by the evidence. He makes several arguments relating to this assignment of error, including claims that the State failed to submit evidence to prove that (1) the pupil activity permit was altered; (2) he acted purposefully or with knowledge; (3) the permit was kept by, or belonged, to a governmental entity; and (4) the offense was

committed in Montgomery County.

{¶ 14} We begin with the issue of whether the pupil activity permit purporting to have an issue date of August 8, 2014, was altered. At trial, the parties submitted Joint Exhibit II, which was a copy of Murphy's pupil activity permit issued on August 8, 2011 with an expiration date of June 30, 2014. There was no dispute that this permit was a valid and authentic document issued by the Ohio Department of Education (hereinafter "ODE"). The parties also submitted Joint Exhibit III, which they stipulated was a copy of the pupil activity permit submitted by Murphy, along with his application to continue as track coach at Ponitz, to the DPS Office of Human Resources.

{¶ 15} A comparison of the two permits reveals that they are identical except for the issuance dates and the dates for which the permits were valid. The permits have the same form number at the bottom of the permit. However, the parties stipulated that the form numbers would not be identical if the 2014 form had been validly issued, because the permits are issued with sequential numbers that do not repeat. Further, both permits were signed by two persons who, on the dates set forth on Exhibit III, were no longer in the signatory positions listed on the permits. Additionally, the issuance date of Exhibit III slopes downward. The parties also stipulated that the ODE did not issue a pupil activity permit with the issuance date of August 8, 2014, and that Murphy's application for a new permit was listed with the ODE as "pending" on that date. Based upon this evidence, we conclude that the trial court could have found beyond a reasonable doubt that the permit submitted by Murphy with his 2016 application was not valid and had been subject to alteration.

{¶ 16} Next, Murphy argues that, because there was no direct evidence of his

mental state, the State failed to prove that he acted with the requisite intent. We have previously discussed this issue in *State v. Ndao*, 2017-Ohio-8422, 99 N.E.3d 1127 (2d Dist.), wherein we stated:

> "Commonly, there is no direct evidence of a defendant's state of mind so the state must rely on circumstantial evidence to satisfy this element of its case. A defendant's state of mind may be inferred from the totality of the surrounding circumstances." *State v. Rodano*, 2017-Ohio-1034, 86 N.E.3d 1032, ¶ 43 (8th Dist.), quoting *In re Horton*, 4th Dist. Adams No. 04CA794, 2005-Ohio-3502, ¶ 23. In Ohio, it is well-established that "a defendant may be convicted solely on the basis of circumstantial evidence." *State v. Nicely*, 39 Ohio St.3d 147, 151, 529 N.E.2d 1236 (1988). "Circumstantial evidence and direct evidence inherently possess the same probative value." [*State v.*] *Jenks*, [61 Ohio St.3d 259, 574 N.E.2d 492 (1991),] paragraph one of the syllabus. "Circumstantial evidence is defined as '[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved. * * *' " *Nicely*, at 150, * * * quoting Black's Law Dictionary (5 Ed. 1979) 221.

*Id.* at ¶ 17.

**{¶ 17}** Murphy was convicted of tampering with records in violation of R.C. 2913.42(A)(1), which provides that "[n]o person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall * * * [f]alsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer

software, data, or record[.]" He was also convicted of forgery in violation of R.C. 2913.31(A)(3), which provides that "[n]o person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall * * * [u]tter, or possess with purpose to utter, any writing that the person knows to have been forged." "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." R.C. 2901.22(B).

{¶ 18} The unrebutted evidence presented at trial demonstrated that the permit submitted by Murphy had at least four identifiable errors on its face. The evidence further demonstrated that ODE had previously issued a valid permit to Murphy. However, ODE had not issued a new permit to Murphy, and his application for such permit was pending. Nonetheless, he was in possession of a permit purporting to be issued by ODE in 2014. The new permit was identical to his prior, valid permit except for the dates. Finally, Murphy submitted the 2014 permit with his coaching application. Based upon this record, we conclude that there was sufficient evidence of intent, and that the trial court's

finding of guilty was not against the weight of the evidence.

{¶ 19} Next, Murphy contends that the State failed to prove that the permit was kept by, or belonged to, a "local, state, or federal governmental entity," as required by R.C. 2913.42(B)(4).[3] In support, he notes that while the parties stipulated that the ODE issued the permits, there was no evidence or stipulation to support a finding that the permits were kept by or belonged to the ODE once they had been provided to the individuals for whom they were issued. He also argues that there was no evidence to support a finding that a governmental agency kept the permit once he submitted it with his coaching application. We agree with the trial court's finding that the Board is a local or state governmental agency, and that the permit was kept by, or belonged to, the Board as soon as Murphy submitted the permit to the Board along with his coaching application.

{¶ 20} "Kept" is the past tense of "keep." *Webster's Ninth New Collegiate Dictionary* 659 (1988). "Keep" is defined as "to have or to retain in one's power or possession." *Black's Law Dictionary* 449 (5th Ed. 1983). The record establishes that Murphy submitted the altered 2014 pupil activity permit to the Board, and that, thereafter, the Board retained (that is, kept) the permit for some period of time. Otherwise, the Board would not have discovered that Murphy was subject to termination because he did not have an approved Ohio pupil activity permit. Therefore, since a local school board is a governmental entity, there was sufficient evidence that the altered permit was kept by a governmental entity, and, further, this determination was not against the manifest

---

[3] Ordinarily, the crime of tampering with records, as proscribed by R.C. 2913.42, is a misdemeanor of the first degree. However, R.C. 2913.42(B)(4) elevates the crime to a third-degree felony "[i]f the writing, data, computer software, or record is kept by or belongs to a local, state, or federal governmental entity * * *."

weight of the evidence. *See Gabel v. Miami East School Bd.*, 160 Ohio App.3d 609, 2006-Ohio-5963, 864 N.E.2d 102 (school board is governmental entity).

{¶ 21} Finally, Murphy contends that the State failed to establish venue for the charge of tampering with records. "Venue is not a material element of any crime, but is a fact that must be proven beyond a reasonable doubt unless the defendant waives it." *State v. Singleton*, 10th Dist. Franklin No. 01AP-632, 2002 WL 264588, *3 (Feb. 26, 2002). Article I, Section 10 of the Ohio Constitution and R.C. 2901.12 require that "evidence of proper venue must be presented in order to sustain a conviction for an offense." *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 20. "It is not essential that the venue of the crime be proven in express terms, provided it is established by all the facts and circumstances in the case, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the indictment." *Id.* at ¶ 19, quoting *State v. Dickerson*, 77 Ohio St. 34, 82 N.E. 969 (1907), paragraph one of the syllabus. Circumstantial evidence may be used to establish venue. *State v. May*, 2015-Ohio-4275, 49 N.E.3d 736, ¶ 24 (8th Dist.).

{¶ 22} In this case, Murphy lived and worked in Montgomery County. The permit was altered for the purpose of obtaining work in Montgomery County. There was no evidence that the offense took place in any other county. Thus, the trial court could reasonably infer that the offense took place in that county.

{¶ 23} Next, Murphy contends that the convictions for sexual battery were not supported by the evidence. Murphy argues that, because he had been terminated at the time of the offenses, he was not authorized to act as a coach and thus, could not be deemed, as the trial court found, a person serving in a school.

{¶ 24} Sexual battery, as relevant hereto, is proscribed by R.C. 2907.03(A)(7), which states that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender is a teacher, administrator, coach, or other person in authority employed by or serving in a school for which the state board of education prescribes minimum standards pursuant to division (D) of section 3301.07 of the Revised Code, the other person is enrolled in or attends that school, and the offender is not enrolled in and does not attend that school."

{¶ 25} "Serving" is not defined in R.C. 2907.03, and the statute does not make reference to any definitional source. "When a statute does not define a relevant term, as is the case here, a court must look to its common, ordinary meaning." *Cincinnati Metro. Hous. Auth. v. Edwards*, 174 Ohio App.3d 174, 2007-Ohio-6867, 881 N.E.2d 325, ¶ 19 (1st Dist.). "This may include the use of dictionary definitions." *Id.* "Serve" is defined as performing the duties of an office or post and as discharging a function. *Webster's Ninth New Collegiate Dictionary* 1075 (1988). Further, the statute clearly contemplates that some offenders will not be employed by the school as it specifically states that persons "employed by **or** serving in a school" are subject to the prohibition on sexual conduct with a student. (Emphasis added.) The statute does not limit those serving in the school to persons who have specific authorization from the school. Had the legislature so intended, it could have inserted such a provision in the statute.

{¶ 26} The record in this case demonstrates that, despite his termination, Murphy continued to perform the duties of a coach up to the day he was trespassed from school property. The evidence supported a finding that he was attending daily practices and instructing the athletes, and that he also continued to travel to track meets with the teams.

There was evidence that the athletes were not aware that Murphy had been fired and that Murphy coached D.M and another girl during a track meet in April 2016. Further, there was evidence that Murphy wore clothing with the Ponitz logo when he attended practices and meets. Based upon this record, we conclude that there was sufficient evidence to support the trial court's finding that Murphy was serving as a track coach at the time he engaged in sexual conduct with D.M. We further conclude that such a finding was not against the manifest weight of the evidence.

{¶ 27} Finally, Murphy raises the claim that the sexual battery statute, R.C. 2907.03(A)(7), is unconstitutional because it impedes his right to engage in consensual sexual conduct with a person who is no longer a minor.

{¶ 28} It is well-settled that "an enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus. Thus, "any doubt as to the constitutionality of a statute will be resolved in favor of its validity." *Id.* at 149. Further, the party challenging the statute bears the burden of demonstrating the unconstitutionality of the statute beyond a reasonable doubt. *State v. Burke*, 2016-Ohio-8185, 69 N.E.3d 774, ¶ 17 (2d Dist.), citing *State v. Brownfield*, 12th Dist. Butler No. CA2012-03-065, 2013-Ohio-1947, ¶ 8.

{¶ 29} "Statutes that make classifications based upon a suspect class are subject to strict scrutiny, as are statutes involving fundamental constitutional rights. Additionally, a statute that makes a classification based on sex or illegitimacy is subject to heightened or intermediate scrutiny. Statutes that are not subject to either strict or heightened

scrutiny are subject to rational basis review." (Internal citations omitted.) *Burke* at ¶ 19.

**{¶ 30}** Murphy cites *Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) to argue that consensual sex between adults is a constitutionally protected right. We note that *Lawrence* used a rational basis review in determining the constitutionality of a statute that affected the rights of two adult men to engage in consensual sexual relations with each other. *Id.* at 578. The court further differentiated this type of consensual adult sex from cases that involve minors or "persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused." *Id.* Thus, it can be inferred that the case before us should be reviewed under a rational basis standard.

**{¶ 31}** R.C. 2907.03(A)(7) expressly penalizes teachers, administrators, coaches and other individuals in a position of authority with a public school for an act for which other individuals would not be penalized. The statute is aimed at prohibiting a teacher, administrator, coach, or "other person in authority" from engaging in sexual conduct with a student of the same school where the offender is either serving or employed. The legislature explained in enacting the statute that it intended to protect individuals in a variety of situations where another might take unconscionable advantage of that individual. *See* 1974 Committee Comment to R.C. 2907.03(A)(7). "R.C. 2907.03(A)(7) is rationally related to its intended purpose of preventing teachers, administrators, coaches, or other persons in authority employed by or serving in a public school from taking unconscionable advantage of students, no matter their age, by using their undue influence over the students in order to pursue sexual relationships." *State v. Merkle*, 11th Dist. Geauga No. 2016-G-0103, 2017-Ohio-8802, ¶ 24.

**{¶ 32}** We conclude that there is a clear rational basis for the statute and that Murphy has failed to demonstrate that the strong presumption of constitutionality afforded to statutes has been overcome in this case. We therefore find that this argument lacks merit.

**{¶ 33}** Both of Murphy's assignments of error are overruled.

### III. Conclusion

**{¶ 34}** Murphy's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and FROELICH, J., concur.


Copies mailed to:

Mathias H. Heck, Jr.
Heather N. Jans
Brock A. Schoenlein
Hon. Steven K. Dankof