[Cite as *State v. Williams*, 2025-Ohio-1457.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                         :

    Plaintiff-Appellee,       :

                                        No. 114284

    v.                        :

KENNETH Q. WILLIAMS,                   :

    Defendant-Appellant.      :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 24, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-673728-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Chauncey Keller, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Michael V. Wilhelm, Assistant Public Defender, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Appellant Kenneth Q. Williams ("Williams") appeals his convictions for three counts of drug possession, two of which were fifth-degree felonies and one

of which was a first-degree misdemeanor.  After a complete review of the record and related law, we affirm.

## I. Procedural History

{¶ 2} Williams and his codefendants were indicted in August 2022 and charged with trafficking, three counts of drug possession, fifth-degree felonies, one count of drug possession, a first-degree misdemeanor, and possessing criminal tools.  All of the charges except for the misdemeanor drug possession had forfeiture specifications for (1) money, in the amount of $4,835; (2) five cell phones; and (3) five electronic storage devices.

{¶ 3} The case proceeded to a bench trial after which the court found Williams guilty of two counts of fifth-degree felony drug possession and guilty of first-degree misdemeanor drug possession (Counts 2, 4, and 5).  Williams was acquitted of the remaining counts.

{¶ 4} After post-trial motion practice and continuances, the court sentenced Williams to community-control sanctions and Williams timely appealed.  However, this court remanded the matter for a ruling on the forfeiture specifications.  The trial court found that the State failed to prove that the property specified in Counts 2 and 4 was subject to forfeiture and thus ruled in Williams's favor.

{¶ 5} Williams's case is now properly before us, and he raises three assignments of error for our review:

I. Mr. Williams convictions in Count 2, Count 4, and Count 5 were not proven by sufficient evidence.

II. Mr. Williams's convictions were against the manifest weight of the evidence.

III. The trial court abused its discretion by allowing in and considering improper hearsay evidence.

## II. Factual History

{¶ 6} On June 28, 2022, Cleveland detectives executed a search warrant at 3581 East 76th Street, a multifamily home where surveillance officers had seen Williams coming and going throughout their investigation. In the home, detectives found Williams's codefendants, as well as crack cocaine, crack pipes, digital scales with residue, bags of powder, sandwich bags, two driver's licenses that did not belong to any of the defendants, Ohio Direction cards, fentanyl, approximately $4,500 in cash, and multiple cell phones and electronic storage devices. Williams was not inside of the house at the time that the warrant was executed.

{¶ 7} Detective Mathew Pollack ("Det. Pollack") of the Cleveland Division of Police testified that he was one of the detectives who executed the search warrant. He testified that he found and collected two bags of drugs placed near a tree in the backyard of the home. The report containing the chemical testing results of the substances was later admitted into evidence without objection as exhibit No. 1 and indicated that the bags collected from under the tree contained fentanyl, 4-ANPP, cocaine, and Tramadol.

**{¶ 8}** On cross-examination, Det. Pollack testified that he received information from a surveillance officer that one of the codefendants had walked into the backyard after making what appeared to be a drug transaction, but did not have any information suggesting that Williams was in the backyard at any time. He also admitted that the drugs recovered from the scene were not tested for DNA evidence and on redirect confirmed that out of the hundreds of drug investigations he had done, he rarely conducted DNA testing on the actual drug bags.

**{¶ 9}** Detective Daniel Dickens ("Det. Dickens") of the Cleveland Division of Police testified that he also executed the search warrant of the home. He described finding and collecting: (1) a bag of powder inside of the refrigerator, (2) an open box of sandwich bags, (3) an expired driver's license and school I.D. belonging to Kenneth Williams, (4) six Narcan nasal sprays, (5) an Ohio Direction card, which he described as a "[w]elfare food stamp card," issued to an individual who was not a defendant, (5) a Visa credit card and a Social Security card belonging to an individual who was not a defendant, (6) five electronic storage devices, (7) miscellaneous pieces of mail addressed to Kenneth Williams and bearing the address of the location that the search warrant occurred, and (7) two cell phones. (Tr. 95.)

**{¶ 10}** Det. Dickens, using the photo on the driver's license that he recovered from the home, made an in-court identification of Williams as the defendant.

**{¶ 11}** Sergeant Jarrod Durichko ("Sgt. Durichko") of the Cleveland Division of Police testified that he also participated in executing the search warrant. As with

the detectives who previously testified, Durichko noted that they had to force entry and found two of the codefendants in the home. When asked generally about the search, Sgt. Durichko stated that "there was numerous items indicative of drug sales and drug use including scales, digital scales, sandwich baggies, sandwich baggie tear-offs, which is partial plastic baggies. There was a fair quantity of cash that was recovered. And then, in the backyard, there was a quantity of drugs that were recovered in the rear of the house." (Tr. 128.)

{¶ 12} Regarding items that he personally seized, Sgt. Durichko described finding and collecting: (1) tear-offs with residue found in a makeup bag, (2) two motion alert monitors located on the exterior of the home, (3) two boxes of sandwich bags, (4) a Narcan spray, and (5) a fentanyl test strip.

{¶ 13} Finally, Sgt. Durichko testified that he spoke to Williams's mother, who was at the property at the time of the search. According to Sgt. Durichko, Williams's mother informed him that "Kenneth Williams primarily lived in the upstairs of the unit, and was in some way connected to Odyssey Heefner who primarily lived in the downstairs of the unit[.]" (Tr. 134.)

{¶ 14} Sergeant Cody Sheets ("Sgt. Sheets") of the Cleveland Division of Police testified that he also executed the search warrant at the subject property. Sgt. Sheets specifically testified that he recovered currency in this matter, particularly $4,500 in U.S. currency in "a hidden drawer underneath the top of the dresser." (Tr. 158.) He also found a $50 bill, two $20 bills, a $5 bill, and five $1 bills, which he

located in the pocket of male clothing.  Sgt. Sheets also testified that he found $35 on the upstairs stair landing.

{¶ 15} Detective Daniel Hourihan ("Det. Hourihan") of the Cleveland Division of Police testified that he was assigned to this case, which first came to his attention via citizen complaints.  He stated that he began conducting surveillance on the subject property and saw Williams coming and going from this property "on many occasions." (Tr. 169.)  Det. Hourihan described completing a "trash pull"[1] that was sent for testing and came back positive for cocaine residue.

{¶ 16} Det. Hourihan described finding and collecting from the scene baggie tear-offs containing residue.  He also testified that the cell phones and electronic storage devices were not searched, noting that the Human Trafficking Unit was going to check the electronic storage devices, but never did.  Nonetheless, he was not sure that the electronic storage devices even belonged to Williams.

{¶ 17} The State's final witness, Detective Christopher Musson ("Det. Musson") of the Cleveland Division of Police testified that he also executed the subject search warrant.  Det. Musson described finding and collecting the following evidence: (1) a digital scale with residue, (2) a spoon with drug residue, (3) tear-offs with residue, (4) a Newport box containing a crack pipe, (5) three unknown pills, (6) two crack pipes with residue found in a purse on the living room sofa,  and (7) mail

---

[1] Trash pulls are "the warrantless search and seizure of garbage left for collection outside the curtilage of a home." *California v. Greenwood*, 486 U.S. 35, 37 (1988).

addressed to Kenneth Williams and bearing the address where the search warrant was executed.

### III. Law and Analysis

{¶ 18} In his first two assignments of error, Williams contends that his convictions were against the manifest weight of the evidence and based on insufficient evidence.

{¶ 19} In his argument that the convictions were based on insufficient evidence, Williams argues that the State (1) did not prove that he had "constructive control over drugs found in a house with known drug users," (2) did not offer sufficient evidence tying any cocaine residue to him, and (3) did not establish that he had control over the rooms where cocaine residue was found.

{¶ 20} The test for sufficiency determines whether the prosecution met its burden of production at trial. *State v. Cottingham*, 2020-Ohio-4220, ¶ 32 (8th Dist.). An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.* Proof of guilt may be supported "by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value."

*State v. Rodano*, 2017-Ohio-1034, ¶ 35 (8th Dist.). Although circumstantial evidence and direct evidence have obvious differences, those differences are irrelevant to the probative value of the evidence, and circumstantial evidence carries the same weight as direct evidence. *State v. Cassano*, 2012-Ohio-4047, ¶ 13 (8th Dist.).

{¶ 21} To convict Williams of Counts 2, 4, and 5, the State was required to prove that Williams "knowingly obtain[ed], possess[ed], or use[d] a control substance." R.C. 2925.11. Count 2 specified that the controlled substance was cocaine; Count 4 specified that the controlled substance was methamphetamine; Count 5 specified that the controlled substance was Tramadol.

{¶ 22} Williams claims that methamphetamine and Tramadol were only found in "communal spaces" — methamphetamine was found in a makeup bag and Tramadol under a tree in the backyard. Regarding cocaine, Williams acknowledges that cocaine residue was found within a glass pipe, on digital scales, and within several bag tear-offs, but argues that the State did not meet its burden in demonstrating that Williams had actual or constructive possession of the aforementioned drugs. We disagree.

{¶ 23} "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Wolery*, 46 Ohio St.2d 316, 329 (1976). "[T]he mere fact that the property is located within the premises under one's control does not, of itself, constitute constructive possession. It must also be shown that the

person was conscious of the presence of the object." *State v. Hankerson*, 70 Ohio St.2d 87, 91 (1982). Circumstantial evidence alone can be used to prove constructive possession. *State v. Alexander*, 2009-Ohio-597, ¶ 25 (8th Dist.). If the evidence demonstrates that the defendant was able to exercise dominion or control over the drugs, the defendant can be convicted of possession. *State v. Tate*, 2010-Ohio-4671, ¶ 12 (8th Dist.), citing *Wolery* at 329. "Thus, the discovery of readily accessible drugs in close proximity to a person constitutes circumstantial evidence that the person was in constructive possession of the drugs." *State v. Harris*, 2013-Ohio-484, ¶ 16 (8th Dist.), citing *Tate* at ¶ 12. "This court has repeatedly recognized that constructive possession can be established by knowledge of an illegal substance or goods and the ability to exercise dominion or control over the substance or the premises on which the substance is found." *Harris* at ¶ 18 (collecting cases).

{¶ 24} Here, sufficient evidence supports a finding that Williams had knowledge that methamphetamine, Tramadol, and cocaine were found within or on the grounds of property over which he had dominion or control. Testimony was received that Williams had access to all portions of the multifamily home, because he was seen going in different doors while being surveilled and that he was "in some way connected" to the tenant of the downstairs unit. Moreover, pieces of mail addressed to Williams and bearing the address of the home were found in both the upstairs and downstairs portions of the home. A driver's license and school I.D. card belonging to Williams were also recovered from the upstairs of the home.

{¶ 25} We also note that drugs, items frequently related to drug trafficking or possession, cash, and drug paraphernalia were found in many different areas around the house, and not just localized to a specific area or an area indicating that perhaps one of the codefendants had exclusive knowledge or control of the drugs. Regarding the drugs found in the backyard under a tree, we find that circumstantial evidence and reasonable inferences made therefrom indicating that someone who had access to all parts of the house necessarily also had access to the backyard, even if Williams was never specifically seen in the backyard. Large amounts of cash were found primarily in the upstairs area of the home. All of these facts considered together provided sufficient circumstantial evidence upon which a factfinder may reasonably conclude that Williams had knowledge of the controlled substances and dominion or control over the premises where the controlled substances were found. Accordingly, Williams's first assignment of error is overruled.

{¶ 26} In his second assignment of error, Williams challenges his convictions as against the manifest weight of the evidence, arguing that these convictions created a manifest injustice because of "how fundamentally flawed the investigation and prosecution of this case was." Williams also takes issue with the trial court's "inconsistent" verdict, acquitting him of one of the substances found in the bag under the tree while convicting him of another and urges us to "commit fully to the fact that this is not a case that deserved any convictions."

{¶ 27} In contrast to a challenge based on sufficiency of the evidence, "[w]eight of the evidence concerns 'the inclination of the greater amount of credible

evidence, offered in a trial, to support one side of the issue rather than the other. . . . Weight is not a question of mathematics, but depends on its effect in inducing belief.'" *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12, quoting *Thompkins* at 387. In our manifest-weight review of a bench trial verdict, we recognize that the trial court serves as the factfinder, and not the jury. *State v. Crenshaw*, 2020-Ohio-4922, ¶ 23 (8th Dist.). "'When considering whether a judgment is against the manifest weight of the evidence in a bench trial, an appellate court will not reverse a conviction where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt.'" *State v. Worship*, 2022-Ohio-52, ¶ 34 (12th Dist.), quoting *State v. Tranovich*, 2009-Ohio-2338, ¶ 7 (12th Dist.). To warrant reversal from a bench trial under a manifest-weight-of-the-evidence claim, this court must determine that "the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Crenshaw* at id. "A conviction should be reversed as against the manifest weight of the evidence only in the most 'exceptional case in which evidence weighs heavily against the conviction.'" *Id.*, quoting *Thompkins* at 387.

{¶ 28} We do not agree that this is the exceptional case where the evidence weighs heavily against conviction. As already discussed, a conviction for drug possession may rest on constructive possession, so long as knowledge of the substances and dominion or control over the premises where the substances are found can be inferred from the evidence presented.

{¶ 29} To the extent that Williams suggests that the prosecution and investigation were "fundamentally flawed," we do not find that it was of such a character so as to find that a manifest miscarriage of justice has occurred. Further, "[t]his court has consistently rejected the argument that inconsistent verdicts from a bench trial should be distinguished from those resulting from a jury trial." *State v. Blalock*, 2022-Ohio-2042, ¶ 15 (8th Dist.) (collecting cases). Inconsistent verdicts "often reflect a factfinder's attempt to avoid redundancy or to grant leniency" and therefore, "[a] defendant who benefits from a compassionate acquittal on one charge cannot fairly complain that it is inconsistent with his proper conviction on another." *State v. Burke*, 1988 Ohio App. LEXIS 2442, *5 (8th Dist. June 16, 1988), citing *U.S. v. Powell*, 469 U.S. 64, 66 (1984).

{¶ 30} Accordingly, we overrule Williams's second assignment of error.

{¶ 31} In his third assignment of error, Williams argues that the trial court committed an abuse of discretion by "overrul[ing] defense counsels objections to testimony that was either hearsay, more prejudicial than probative, or both." He specifically cites to the following portion of the transcript:

> [THE STATE]: When you were executing this search warrant, did you perform any other responsibilities with regard to execution of the search warrant?

> [SGT. DURICHKO]: So aside from checking over the inventory, when things are complete on this day I spoke with a female on scene who identified theirself [sic] as the mother of Kenneth Williams.

> [THE STATE]: What did you learn from interaction [sic] from this person?

[WILLIAMS'S COUNSEL]: Objection, your Honor.

THE COURT: Overruled.

[SGT. DURICHKO]: I learned that Kenneth Williams primarily lived in the upstairs of the unit, and was in some way connected to Odyssey Heefner who primarily lived in the downstairs of the unit, and that there was a familiarity with Kenneth's mother and the property we were at that day.

(Tr. 134.)

{¶ 32} Williams speculates that this objection was overruled because it is a statement offered to explain an officer's conduct while investigating a crime, which is a known hearsay exception. *See State v. Blevins*, 36 Ohio App.3d 147, 149 (10th Dist. 1987). Williams argues that "there is nothing in either the question or the answer that explains how the investigation proceeded as a result of the information received." Notwithstanding the fact that Williams is speculating as to the trial court's ruling, even if we assumed that this statement did constitute improper hearsay, the trial court was capable of distinguishing such testimony. During a bench trial, we presume that the trial court disregards improper hearsay evidence unless there is affirmative evidence in the record to the contrary. *State v. Crawford*, 2013-Ohio-1659, ¶ 61 (8th Dist.).

{¶ 33} While Williams argues that the alleged hearsay from Sgt. Durichko is the only testimony linking him to the upstairs of the home, we disagree and again, reiterate that sufficient evidence exists upon which a trier of fact could find that Williams resided in the upstairs unit even without his mother's statements. Mail, a driver's license, and a school ID belonging to Williams were found in the upstairs

area of the home. Nearly all of the cash found in the home was found in the upstairs area of the home. Multiple cell phones and electronic storage devices were found in the upstairs of the home. Numerous Ohio Direction cards and driver's licenses were found in various areas of the home, including the upstairs. From this evidence, it is not unreasonable to infer that Williams occupied the upstairs unit. Therefore, even without the alleged hearsay testimony, the trial court could have concluded that Williams occupied the upstairs of the unit and that Williams had access to all the units. Accordingly, any error in admission would be harmless and thus, we need not determine the impropriety of the alleged hearsay statement. Williams's third assignment of error is overruled.

{¶ 34} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

MARY J. BOYLE, P.J., and
DEENA R. CALABRESE, J., CONCUR